Nov. Term,
1859.

THE MICHIGAN SOUTHERN AND NORTHERN INDIANA RAIL-
ROAD COMPANY *v.* BIVENS.

THE MICHI-
GAN, &c.,
RAILRO'D CO.
*v.*
BIVENS.

Unless otherwise instructed by the Court, the jury may render either a general
or a special verdict; but upon the request of either party, the Court must
direct a special verdict upon all or any of the issues; and if requested by
either party, the Court must direct the jury, that *if they find a general ver-
dict,* they must find specially upon particular questions of fact.

Where a part, only, of property transported by a common carrier, is injured,
and the remainder is safely carried to the point of destination, the consignee
or owner cannot, in consequence of the injury to a part reject the part unin-
jured, and hold the carrier liable for the whole.

The carrier is not made liable for the whole, by a failure to offer to deliver the
uninjured part. A carrier by railroad is not bound to make personal deliv-
ery of the property to the consignee, nor to offer to deliver it. *Quære,* whe-
ther he must give notice of its arrival.

It is the duty of the consignee to repair to the depot or place of delivery, for
his goods, and the carrier cannot be sued for non-delivery unless there has
been a refusal to deliver on request.

APPEAL from the *Elkhart* Court of Common Pleas.

WORDEN, J.—Suit by the appellee against the appellants.

*Saturday,
December* 3.

The complaint alleges in substance that the appellants,
on, &c., at the town of *Elkhart,* &c., as common carriers,
received from the appellee eight thousand one hundred
feet of lumber, to be transported, for a certain reasonable
reward, to *Chicago;* that the company so carelessly and
negligently conducted themselves in the premises, that,
through their negligence, and that of their servants, the
said property was greatly damaged, and was afterwards
converted to the use of the company, and was wholly lost
to the plaintiff.

Answer, in denial.

Trial, verdict, and judgment for the plaintiff, over a mo-
tion for a new trial.

A bill of exceptions was filed, containing evidence ad-
duced on the trial; but it is insisted, by counsel for the
appellee, that, as the formula of the 30th rule is not fol-
lowed, by stating that "this was all the evidence given in
the cause," the bill should not be considered as showing
all the evidence.

Nov. Term,
1859.

THE MICHI-
GAN, &c.,
RAILRO'D CO.
v.
BIVENS.

The rule not being complied with, and the objection being made, we shall determine the case without reference to the evidence.

The motion for a new trial was predicated, amongst other things, upon supposed errors of the Court in giving and refusing instructions to the jury.

The defendants asked the Court to instruct the jury to find specially the following questions of fact, viz.:

1. "Was not about five thousand feet of the lumber specified in the complaint carried by the defendants for the plaintiff to *Chicago?*"

2. "Was there ever any demand on the part of the plaintiff on the defendants, for the lumber thus carried to *Chicago?*"

This the Court refused, and, we think, correctly. Unless otherwise directed by the Court, the jury might render either a general or a special verdict; but upon the request of either party, the Court must direct a special verdict upon all or any of the issues; and if requested by either party, the Court must direct the jury, if they render a general verdict, to find specially upon particular questions of fact. 2 R. S. p. 114, § 336. The Court had not directed, nor had it been requested to direct, the jury to find a special verdict, and they were at liberty to find generally or specially, and as they could only be required to find specially upon particular questions of fact, in case they should elect to find a general verdict, the unqualified direction asked, was properly refused. The jury should be required to answer particular questions of fact, only in case they should find a general verdict.

The defendants asked several instructions, which were refused. The evidence not being considered as before us, we must presume that if the charges were correct in point of law, they were refused as not being applicable to the evidence.

The following instruction was given, to which exception was taken by the defendants, viz.:

"That if, in case the common carrier contracts to carry property of a particular character, as, in this case, a par-

ticular kind of lumber, and the same is injured, and a por- tion of it, only, safely carried to the point of destination, and the carrier wishes the owner or consignee to accept that portion which is uninjured, it is necessary for him to make an offer to deliver the same, and then it is at the option of the party to receive it or not; and if no such offer is made, the carrier will be liable for the full amount of the value of the property."

This charge, in our opinion, was wrong, as applied to any supposable state of facts that might have been legitimately proven on the trial of the cause. Can it be said that when a part only of the property to be transported, is injured, but the remaining "portion is safely carried to the point of destination," the consignee or owner can, in consequence of the injury to a part, reject the part thus uninjured, and hold the carrier liable for the value of the whole? We think not. Suppose several car-loads of wheat are to be transported, all of which, except one, arrive safely and without injury, but the one is damaged by rain in consequence of the insufficiency of the car, can the consignee or owner reject the car-loads thus uninjured, in consequence of the damage to the one?

This question is settled by authority. It is said by a standard author, that "where the goods are only damaged, the owner is still bound to receive them, and cannot abandon, and go against the carrier as for a total loss. But whether the owner have accepted the goods or not, he may recover for any deterioration they may have sustained, unless by the excepted risks in the carrier's undertaking." Redf. on Railw. 320.

In *Shaw* v. *The South Carolina Railroad Co.*, 5 Rich. 462, it was held, that "where the goods in the carrier's possession are uninjured in quality, but there is a partial loss, the owner cannot abandon the goods and recover their entire value; he can recover only the price, at the place of delivery, of the goods actually lost." The fact that a part of the goods are injured merely, instead of being entirely lost, furnishes no reason for the application of any different rule.

Nov. Term,
1859.

The Michi-
gan, &c.,
Railro'd Co.
v.
Bivens.

The charge given is also erroneous in stating that it was necessary for the carrier to offer to deliver the uninjured property, and if no such offer was made, he would be liable for the full amount of the property.

Whatever may be the duty of a common carrier, who, by the course of his business, is accustomed to make a personal delivery, at the residence or place of business of the consignee, and whose mode of transportation admits of such delivery, it is settled abundantly that a carrier by railroad is not bound, as a general proposition, to make such personal delivery.

In Redfield on Railways, p. 251, the author says: " We understand the cases to have settled the question, that the carrier by railway is neither bound to deliver to the consignee personally, or to give notice of the arrival of the goods." The latter branch of this proposition will be remarked upon hereafter. On page 252, the same author says: " The cases all agree that in regard to carriers by ships and steamboats, nothing more is ever required, in the absence of a special contract, than landing the goods at the usual wharf, and giving notice to the consignee, and keeping the goods safe a sufficient time after, to enable the party to take them away. * * * The course of doing business upon railways, in being confined to a particular route, having stated places of deposit, and generally erecting warehouses for the safe keeping of goods, all seem to require that the same rule, as to the delivery of goods, should prevail, which does in transportation by ships and steamboats."

In Edwards on Bailments, p. 515, it is said, that "since ships and vessels must stop at the wharf, and railroad cars at the depot, notice given to the consignee of the arrival of the goods and of their place of deposit, is taken by custom in lieu of personal delivery."

Whatever diversity there may be in the decisions in respect to the necessity of notice to the consignee, in order to discharge the carrier, there is little or none in respect to the point now under consideration. The goods carried by railroad, having arrived at the proper depot, and the con-

Nov. Term,
1859.

THE MICHI-
GAN, &c.,
RAILRO'D Co.
v.
BIVENS.

signee having been notified of their arrival, the carrier is under no obligation to seek out the consignee and make an offer to deliver them. It is the business of the consignee to repair thither to receive the goods, and if the carrier refuse to deliver them on request, no valid excuse being shown, an action will, of course, lie for their non-delivery.

The fact that some of the goods have been damaged in their transit, can make no difference in the application of the principle. We have seen that such injury does not authorize the consignee or owner to reject the goods entirely, and hold the carrier liable as for a total loss; neither does it devolve upon the carrier any obligation to make an offer to deliver, otherwise than as if the goods had all arrived uninjured.

The counsel for the appellee have, with much ability and research, discussed the proposition, involved in the foregoing quotation from *Redfield*, that a carrier by railroad is not bound to notify the consignee of the arrival of the goods. Upon this point, Judge REDFIELD cites the case of *The Norway Plains Co.* v. *The Boston and Maine Railway*, 1 Gray, 263, and *The Farmers and Mechanics' Bank* v. *The Champlain Transportation Co.*, 23 Verm. R. 211. If these cases be considered as deciding the proposition, there are others which hold the other way; as the case of *The Michigan Central Railway* v. *Ward*, 2 Mich. R. 538; this, however, was decided upon a statutory provision. In *The Rome Railway* v. *Sullivan*, 14 Geo. R. 277, notice is held to be necessary on general principles. *Vide* Redf. on Railw., note p. 255.

We shall not decide nor further discuss this proposition, because its decision is not necessary to a determination of the case before us. When it shall arise, there will be time for its determination. For the purposes of this case, it may be admitted that the liability of a carrier by railroad continues until the goods have arrived, and are safely stored in the proper depot, the consignee duly notified, and until a reasonable time has elapsed, after notice, for the consignee to remove his goods; and yet it would by no means follow that the carrier would be bound to

Nov. Term,
1859.

The Michi-
gan, &c.,
Railro'd Co.
v.
Bivens.

make an offer to deliver them. As before remarked, it is the duty of the consignee or owner to repair to the depot, or place of delivery, for his goods, and the carrier cannot be sued for their non-delivery, unless there has been a refusal to deliver on request.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*J. B. Niles*, for the appellants (1).

*J. A. Liston* and *R. Lowry*, for the appellee (2).

(1) Extract from Mr. *Niles's* brief:

A railroad company, unlike a stage or express wagon running through the streets of a town, is not bound to deliver freight at the place of business or residence of the owner or consignee. Shaw, Chief Justice, in *The Norway Plains Co.* v. *The Boston and Maine Railroad Co.*, 1 Gray, 271, says: "The nature of the transportation (by railroad) though on land, is much more like that by sea, in this respect, that from the very nature of the case, the merchandize can only be transported along one line and delivered at the termination, or at some fixed place by its side at some intermediate point. The rule in regard to ships is very exactly stated in the opinion of Buller, J., in *Hyde* v. *The Trent and Mersey Navigation Co.*, 5 T. R. 397: A ship trading from one port to another, has not the means of carrying the goods on land; and, according to the established course of trade, a delivery on the usual wharf is such a delivery as will discharge the carrier." It would be absurd to argue that a railroad company is bound to deliver heavy lumber like that described by the witness in this case, except at their proper station. Neither are they bound to give notice of the arrival of goods at the point of destination. The consignor is expected to advise the consignee of the shipment, and if they happen to be the same person, he has all the information which he needs. As is remarked by Chief Justice Shaw, in the case referred to above, "the arrivals of goods at the large places to which goods are sent by railroad, are so numerous, frequent, and various in kind, that it would be nearly impossible to send special notice to each consignee, of each parcel of goods, or single article forwarded by the trains." Redf. on Railw., 249.—1 Gray, 263.

If part of the lumber was carried to the point of destination, the plaintiff was bound to accept it, and he is entitled only to his actual damages, occasioned by the loss or injury of the balance. In the nature of the case, part of a lot of square oak timber may be injured or lost without destroying wholly the value of the remainder. If the doctrine announced in the instruction to the jury in this case is correct, then when a railroad company undertake to transport cattle, and some are injured so that the company may think it best to kill them, in order to save their hides and tallow, they thereby assume an entirely new and increased responsibility as to the others—at least so far as to be required, contrary to the general rule, to look up the consignee, wherever he may be, and make a formal tender of the remaining cattle. And even then, according to the instruction, it would be optional with the consignee to receive them or not. Where goods are only damaged or partly lost, the owner is still

Nov. Term,
1859.

THE MICHI-
GAN, &c.,
RAILRO'D CO.
v.
BIVENS.

bound to receive them or what remain, and cannot abandon them and go against the carrier as for total loss. See this subject discussed in *The Chicago, &c., Railroad Co.* v. *Warren,* 16 Ill. R. 502; Redf. on Railw., pp. 320, 321.

(2) Counsel for the appellee submitted the following argument:

The appellants' counsel, in his brief, says, that "the evidence is all set forth in a bill of exceptions." The learned counsel is greatly mistaken. The record shows no such thing. The bill of exceptions to which he refers, ends with this language, to-wit, "and which was all the testimony adduced on the trial of said cause." It does not comply with rule 30 of this Court, and therefore can avail him nothing. See *Meeker* v. *Patty,* 6 Ind. R. 467; *Ausem* v. *Byrd, id.* 475. These authorities are sufficient to dispose of his bill of exceptions, and that virtually disposes of the whole case; but we will look a little further into the record, and see what merit the appellants have in the remaining errors assigned.

The complaint charges that the appellants, as common carriers, undertook to safely convey the lumber of the appellee from *Elkhart, Indiana,* and deliver five thousand six hundred feet of said lumber to *F. D. Wilson* (who must be regarded as a consignee,) at the *Rock Island* repairing shop, in the state of *Illinois;* and the remainder, two thousand five hundred feet, of said lumber, was to be delivered to *D. C. Harley* (who must also be regarded as a consignee,) in the city of *Chicago,* in *Illinois;* that by carelessness, &c., the lumber was greatly damaged, and was afterwards converted by the appellants to their own use, and was wholly lost to the appellee. The learned counsel admits, in his brief, that the general denial in the appellants' answer, is all of the answer that need be noticed. The evidence is not objectionable. The witness testifies that he went in search of the lumber, and was at *Chicago,* and saw the agent of the appellants, one *Bacon,* who pointed out, in one corner of the appellants' lumber yard, lumber, as being part of plaintiff's, and said that the lumber had been injured in the "smash up" on the railroad of the appellants; and *Bacon* also told witness that he had charge of the place of reception of lumber of the appellants, at *Chicago.* It is a sufficient answer to the appellants' objection, that *Bacon* was there in charge of the lumber yard, exercising control over it; that was a fact. Thus far the witness testified to facts of his own knowledge; and as to what *Bacon* told him, as to his being the agent of the railroad company, and having charge of the place of reception of lumber of appellants at *Chicago,* the learned counsel will find himself in this predicament, that if *Bacon* was not the agent, yet he had the custody of the lumber yard, and of the plaintiff's damaged and converted lumber. These were facts, which the witness saw; and what *Bacon* said on that occasion, was with reference to the subject-matter of the lumber, then in his custody, and which the witness then and there saw at the time, in a damaged, mutilated, and converted condition. And on the other hand, if *Bacon* was the agent of the appellants, and the law (in the absence of proof) will presume it, from the circumstances, as he was then and there acting in that capacity, and professing to act in that capacity, at a place where the company had an established place of doing business; and as the company can only do business by and through their agents, and, in one aspect or the other, the acts and declarations of *Bacon* are part of the *res gestæ,* and were proper for the jury to consider with the other facts, then, if he was such agent—and it was for the jury to judge from all the facts

Nov. Term,
1859.

THE MICHI-
GAN, &C.,
RAILRO'D CO.
v.
BIVENS.

and circumstances—the appellants are bound by the acts and statements of *Bacon* to the witness, as the company can only act and speak by and through their agents; and in either view of this part of the evidence, it was not objectionable, and was clearly admissible in one aspect or the other, and it matters not which, as it most clearly proves a conversion of the lumber by the appellants, as it is not pretended that it was ever delivered or offered; and here no demand was necessary. "The law never requires a vain thing." Broome's Leg. Max. There is another fatal objection. The counsel did not point out to the Court below his objections to the evidence. *Rogers* v. *Lamb*, 3 Blackf. 155.—*Russell* v. *Branham*, 8 *id.* 277. He did object to *C. W. Bivens's* evidence as to what he saw and heard from *Williams*, the superintendent of the western division of the railroad. This part of the evidence was given in proof of the conversion. There is proof enough to sustain the verdict without it. This is the only objection to the evidence.

"A common carrier remains liable until the actual delivery of the goods to the consignee; or, if the course of the business be such that delivery is not made to the consignee, his liability continues until notice of the arrival of the goods be given." *Gibson* v. *Culver*, 17 Wend. 305.

"The rule of law is the same in respect to a carrier by water, as to a carrier by land." *McArthur* v. *Sears*, 21 Wend. 190.

"The undertaking of the carrier to transport the goods to a particular place, necessarily includes the duty of delivery there in safety." *De Mott* v. *Laraway*, 14 Wend. 225.

"Generally a carrier is bound to deliver goods personally to the consignee; but when transportation is by vessel or boats, notice of arrival, and of the place of delivery, is sufficient; and if the consignee is absent, refuses to receive, or cannot, after reasonable search, be found, the carrier may discharge his liability by storing the goods with a responsible party, for account of the owner, in relation to whom the storekeeper becomes bailee." *Fisk* v. *Newton*, 1 Denio, 45.

"Common carriers are liable for every injury which happens to goods entrusted to their care, unless it be caused by the act of GOD (inevitable accident) or of the enemies of the land." *Colt* v. *M'Mechen*, 6 Johns. 160.—*Kemp* v. *Coughtry*, 11 *id.* 107.

"Where goods were put on board of defendant's vessel to be carried to *Albany*, and, on arriving there, were, by defendant's directions, put upon the wharf, held, that this was not a delivery of the goods to the consignee, and that the evidence of usage to deliver goods in this manner, was immaterial; that the defendant was liable in trover for such part of the goods as were not actually delivered to the consignee." *Ostrander* v. *Brown*, 15 Johns. 39.

"Where the goods are embezzled or lost during the voyage, the master is bound to answer for the value of the goods missing, according to the clear net value of goods of like kind and quantity at the port of delivery." *Watkinson* v. *Laughton*, 8 Johns. 213.

"The law of common carriers is one of great rigor." *Boyce* v. *Anderson*, 2 Pet. 155.

"The servants of a corporation are no more and no less than the servants of natural persons, and whatsoever is negligently done or omitted by them, is, as to the public, the employer's act." "Public policy demands that the law should be applied as rigidly to railroad companies as to any other species of

Nov. Term,
1859.

The Michi-
gan, &c.,
Railro'd Co.
v.
Bivens.

passenger carriers." *Gillenwater* v. *The Madison, &c., Railroad Co.,* 5 Ind. R. 339.

"The liability of a carrier, under a bill of lading, continues until the merchandize is safely delivered to the consignee, at the port of discharge, or placed in such a situation there, as to be equivalent to a safe delivery; and the carrier is not discharged of the custody of the goods until this is done, * * and he gives reasonable notice to the consignee thereof. * * * Such landing, with such notice, is equivalent to a personal delivery." 2 Am. Law Reg. 563. —*Vose* v. *Allen,* U. S. Dist. Court, N. Y. in Admiralty, *February* term, 1854. See Ang. and Ames on Corp., § 310. This rule is applicable to common carriers, navigating inland lakes and rivers; and to carriers by land the rule is more rigid. The rule as to inland common carriers is laid down in the cases of *Fisk* v. *Newton,* 1 Denio, 45; *Crawford* v. *Clark,* 15 Ill. R. ——; *Scholes* v. *Ackerland, id.* ——. See the case of *The Grafton,* 1 Blatch. 175.

The third error assigned is not well taken. By 2 R. S. p. 114, § 336, in all cases, when requested by either party, the Court shall instruct the jury, if they render a general verdict, to find specially upon particular questions of fact, to be stated in writing. There are two fatal objections to the assignment:

1. The appellants asked no such instructions as the statute authorizes. They asked the Court to instruct the jury absolutely to find, and not conditionally, as the statute provided, "if they rendered a general verdict." The Court correctly refused to give the absolute instructions to find specially; and the appellants did not ask for them in any other manner.

2. The second objection is, that the request to instruct the jury to find specially, was entirely irrelevant to the matters in issue. The complaint charges that the appellants undertook to convey the lumber safely for the appellee, from *Elkhart* to *Chicago,* to be delivered in parcels, to two consignees. Whether the appellants ever carried the lumber to *Chicago* is immaterial, as they never delivered it to the consignees, nor ever gave them notice, as they were bound to do. See authorities, *supra.* But, on the contrary, they converted the lumber to their own use. A conversion dispenses with a demand. "Conversion may, therefore, be either direct or constructive; and, of course, is proved either directly or by inference. * * * Using a thing, without license of the owner, is a conversion; as is also the misuse or detention of a thing by a finder, or other bailee. * * * If a bailee of goods deliver them over to another, in violation of the orders of the bailor, it is a conversion." 2 Greenl. Ev., § 642. "An admission by the defendant, that he had had the goods of plaintiff, and that they were lost, is sufficient evidence of a conversion, without showing a demand and refusal." *Bristol* v. *Burt,* 7 Johns. 254. —*Gibbs* v. *Chase,* 10 Mass. R. 130. "Proof that the defendant promised to return the goods to the plaintiff, and that he had not returned them, is sufficient evidence of a conversion, without showing a demand and refusal." *La Place* v. *Aupoix,* 1 Johns. Cas., 406.

The fourth error assigned by the appellants is, that the Court below erred in giving instructions to the jury against objections, and also erred in refusing instructions, asked for by the appellants.

The instructions asked by the appellants are three in number, all of which, as asked, were not applicable to the evidence, and hence not the law in this case; and they were correctly refused by the Court. The instruction given by the Court is substantially the law applicable to the evidence.

Nov. Term,
1859.

THE MICHI-
GAN, &c.,
RAILRO'D CO.
v.
BIVENS.

"As a general rule, where goods are intrusted to a carrier, and they are not delivered according to contract, the value of the goods, with interest thereon from the day when they should have been delivered, is the measure of damages." See Sedgw. on Dam., 355.—*Ludwig* v. *Meyre*, 5 Watts and Serg., 435. —*Hand* v. *Baynes*, 4 Whart. 204.—*Segura* v. *Reed*, 3 La. R. 695.

"It is the value of the article at the place of delivery, that the plaintiff, relying on the carrier, has lost; it is that value which he would have received, if the contract had been performed." Sedgw. on Dam. 356.—*Brunt* v. *Bowlby*, 2 B. and A. 932. The ground of the ruling is, that it is a breach of contract. "The damages should afford the plaintiff an adequate indemnity for the loss sustained at the time the injury happened. * * * The fair test of its value, and consequently of the loss to the owner, is its price at the time in the market." *Smith* v. *Griffith*, 3 Hill, 333.

"As the liability of the carrier begins with the delivery of the goods to him, so it continues until the delivery of the goods by him. For he is bound not only to carry them to their destined place, but to deliver them to the bailor, or as he may direct." 1 Pars. on Cont. 657. "And this he must do within what shall be a reasonable time, judging from all the circumstances of the case; and within the proper hours of business, when the goods can be received and properly stored." *Id.*, note (m). "It seems to be usual with railroads not to send the goods out of their depots. There is no objection to this usage strengthening itself into law. But we think, in that case, that the railroad carrier should give notice forthwith, on the arrival of the goods, to the consignee, if his residence is known, or can be found by any reasonable exertions. We think the law should be held to make this requirement, and that any usage against it would be so far against public policy, that it might well be doubted whether it should be permitted to control the law; at least, not unless it were quite universal, and well known to all." *Id.*, pp. 558, 662, 663, 664, and notes.

*Parsons* speaks of "the usage strengthening itself into law," respecting railroad companies as common carriers; still, it is not yet the law, but whenever it may be recognized as the law, yet "they are bound to give notice forthwith, on the arrival of the goods, to the consignee." The mere innate power of Courts cannot create a usage. They can only adjudge, when satisfied by proof, that a usage exists, or has acquired, by its existence, the force of law. "A custom derives its force from the tacit consent of the legislature and the people, and supposes an original actual deed or agreement." 2 Blacks. Comm., pp. 30, 31.—1 Chit. Pr. 283. It follows, therefore, there can be no custom in relation to a matter regulated by law.

"When a custom is public, peaceable, uniform, general, continued, reasonable, and certain, and has lasted 'time whereof the memory of man runneth not to to the contrary,' it acquires the force of law." See Bouv. Law Dict. tit. Custom. Any change, therefore, by usage or custom, respecting railroad companies, as to their rights or liabilities as common carriers, is a change of the common law itself, which it is not in the power of any Court in the state, by its mere ruling, to do. It matters not what Courts in other states may have ruled otherwise, on this common-law liability of railroad companies, as common carriers. Such ruling is an usurpation; and is nothing less than judicial legislation—a power belonging to a different branch of the government. Railroad companies are common carriers by virtue of legislative action; they are the creatures of

positive legislative grant, existing in all their rights, powers, duties, and liabilities, by positive law, and not by shifting implications nor now-born views of expediency, regulated by the sliding scale of mere judicial authority, and as fluctuating. The charter is a contract; and if its obligations cannot be impaired to the detriment of the corporation, how can the corporation violate its obligations to the detriment of the public? The rights and duties of common carriers are well settled and defined. Business convenience of railroad companies is one thing; their legal rights and obligations is another. Railroad companies were chartered with reference to existing laws, defining the duties and liabilities of common carriers; otherwise, the pretended modification of their duties and responsibilities would have been incorporated in the grant of their franchises. There is neither injustice nor hardship in this view of their rights and duties; but where would the injustice, and their ability for evil to the public end, under a less restricted interpretation? If their common law rights and liabilities are to be restricted, enlarged, changed, or modified, it is the legitimate business of the legislature, and not that of the Courts.

"A usage in conflict with plain, well established rules of law, is not admissible in evidence in any case, and must be disregarded. We may be permitted to add the remark, that were the Courts, by their decisions, to encourage the growth of these local usages, originating generally in lax business practice or mistaken ideas of law, they might become as great an evil—a source of as much want of uniformity in the law—as was the local legislation of the past—an evil supposed to be eradicated from our political system by the new constitution.". "It must be a usage relating to matters of fact, and not to modes of thinking as to the law." *Cox* v. *O'Riley*, 4 Ind. R. 368, 373.

"Usage of a trade does not require to be immemorial to establish it; if it be known, certain, uniform, reasonable, and not contrary to law, it is sufficient. But evidence of a few instances that such a thing has been done, does not establish a usage." Bouv. Dict. tit. Usage.

We do not wish to be understood, that a railroad company may not deliver goods at their depot; but we wish to be understood to say, that they must give the consignee notice forthwith, when the goods arrive at the place of destination, and must deliver them there to the consignee or bailor; and this the company is bound to do in a reasonable time, and within the proper hours of business, when the goods can be received and properly stored; and if the company, without fault on their part, are unable to find the consignee or to give him notice, then they must place the goods in such a situation there, as to be equivalent to a safe delivery, and the company is not discharged of the custody of the goods, as carriers, until this is done; and if the company fails to do this, it amounts to a conversion, and no demand is necessary.

\* \* \* \* \* \* \* \* \*

The case of *Thomas* v. *The Boston, &c., Railroad Corp.*, 10 Met., 477, 478, referred to by Justice Shaw, in his opinion delivered in the case of *The Norway Plains Co.* v. *The Boston. &c., Railroad Co.*, 1 Gray, does not sustain him on the question of notice, as that was not a question arising in that case. "In the case at bar," says Justice Hubbard, 10 Met. 477, 478, "the goods were transported over defendant's road, and were safely deposited in their merchandise depot, ready for delivery to the plaintiff, of which he had notice, and were, in fact, in part taken away by him; the residue, a portion of which was afterwards lost, being left there for his convenience."

VOL. XIII.—18

*Margin note:*
Nov. Term,
1859.

THE MICHIGAN, &c.,
RAILRO'D CO.
v.
BIVENS.

Nov. Term,
1859.

THE MICHI-
GAN, &c.,
RAILRO'D CO.
v.
BIVENS.

The only material question in that case was, as to the character of the liability of the company for the loss of the goods. The facts show that they were liable as warehousemen.

The counsel for the appellant relies on the authority in 1 Gray, 271. See p. 269, where Justice SHAW uses this language: "That railroad companies are authorized by law to make roads as public highways, to lay down tracks, place cars upon them, and carry goods for hire, are circumstances which bring them within all the rules of the common law, and make them eminently common carriers." Again, at p. 270, "Being liable as common carriers, the rule of the common law attaches to them." "It is sufficicient, therefore, to state and affirm the general rule."

The Court does not decide the question of notice, although Justice SHAW, who delivered the opinion of the Court, uses this language at p. 274:

"It is argued in the present case, that the railroad company are responsible as common carriers of goods, until they have given notice to consignees of the arrival of goods. The Court are strongly inclined to the opinion, that in regard to the transportation of goods by railroad, as business is generally conducted in this country, this rule does not apply."

It will be observed, that the only reason given for the Court being strongly inclined to the opinion, is, as business is generally conducted in this country. This supposes an established usage, changing the common-law liabilities of railroad companies as common carriers—a supposition entirely unwarranted. Usages are facts, to be established by proof, and not by presumption. We have supposed, and we think we are sustained by authority, that where a usage is relied on, it must be shown by proof to exist.

And see pp. 271 and 272, where Justice SHAW uses this strange language: "The Court are of opinion, that the duty assumed by, the railroad corporation is," * * * "and, this being known to owners of goods forwarded, must, in the absence of proof to the contrary, be presumed to be assented to by them, so as to constitute the implied contract between them."

Here the learned justice places his decision on the ground of an implied contract, arising from an assumed duty, known to owners of goods. Has he any authority for this opinion? "It is not necessary, in order to charge the carrier, that the goods are lost in transitu, while immediately under his care; for he is bound to deliver them to the consignee, or send notice to him according to the direction; and though they are carried safely to the inn, yet if left there till they are spoiled, and no notice given to the consignee, the carrier is liable. See 3 Wils. 429; 2 Blackf. 916.

The case of Hyde v. The Trent, &c., Navigation Co., 5 T. R., opinion by Lord KENYON, at p. 395. He says: "On the general point I have great doubts; the leaning to my mind at present is, that carriers are not liable to the extent contended for." So it will be seen that the point is not decided in that case; and furthermore, it was a usage with that company, of which the defendants had notice, to deliver goods by a porter. The plaintiff recovered judgment. And at p. 396, ASHURST, J., says: "I am glad to find one circumstance which put the case out of all doubt, namely, that one of the bills contains a charge for wharfage and cartage, which is decisive to show that in this case the liability of the defendants continued, until the goods were delivered. The inclination of my opinion on the general question is, that a carrier is bound to deliver the goods to the person to whom they are directed." So it will be

seen, that although the question is not decided, yet these two eminent judges differed diametrically in opinion. ASHURST, J., adds: "A contrary decision would be highly inconvenient, and would open a door to fraud." See his reasoning, p. 396. BULLER, J., same page, says: "Upon the general question, my opinion coincides with that given by my brother ASHURST." His whole reasoning is forcible, and sustains our position.

Nov. Term,
1859.
———
THE MICHI
GAN, &C.,
RAILRO'D CO
V.
BIVENS.

At p. 399, GROSE, J., uses this language: "On the general question of law, I am not so perfectly clear; and if it had been necessary to have decided this case on the general law, I should have desired further time to consider of it. As far, however, as I have considered this case, the strong inclination of my opinion is, that the defendants would be liable as common carriers. The law, which makes carriers answerable as insurers, is indeed a hard law; but it is founded on wisdom, and was established to prevent fraud." At p. 400, he says: "The case of foreign goods brought to this country, depends on the custom of the trade, of which the persons engaged in it are supposed to be cognizant; by the general usage, the liability of ship carriers is at an end, when the goods are landed at the usual wharf. On the general question of law, I do not mean to be bound by the opinion I have now given, though at present I think that common carriers are answerable if the goods be lost at any time before they are delivered to the owner."

So it will be seen, that this case in 5 T. R. supra, neither sustains the inkling of Justice SHAW, in 1 Gray, nor the opinion of the learned counsel for the appellants in the case at bar; but, on the contrary, the weight of that authority sustains the doctrine contended for by the counsel for the appellee.

A person who is a common carrier may, at the same time, be a warehouseman. If the goods are deposited in the warehouse, for the purpose of being carried, such person's responsibility, as a common carrier, begins with the receipt of the goods. See Ang. on Car., § 131; Forward v. Pittard, 1 T. R. 27; Maving v. Todd, 1 Stark. 72.

In Hollister v. Nowlen, 19 Wend. 241, (Ang., § 153,) BRONSON, J., in delivering the opinion of the Court, quotes the opinions of Lord HOLT and Chief Justice BEST, with the view of showing that the law in relation to common carriers is simple, well defined, and, what is no less important, well understood; and in its vindication, he says: "There is less hardship in the case of the carrier than has sometimes been supposed; for, while the law holds him to an extraordinary degree of diligence, and treats him as an insurer of the property, it allows him, like other insurers, to demand a premium proportioned to the hazards of his employment. The rule is founded upon a great principle of public policy; it has been approved by many generations of wise men; and if Courts were now at liberty to make, instead of declaring the law, it may well be questioned, whether they could devise a system which, on the whole, would operate more beneficially. I feel the more confident in this remark from the fact, that in Great Britain, after the Courts had been perplexed for thirty years with various modifications of the law in relation to carriers, and when they had wandered too far to retrace their steps, the legislature finally interfered, and restored the salutary rule of the common law."

In Roberts v. Turner, SPENCER, J., said the carrier is responsible as an insurer of the goods, "to prevent combinations, chicanery, and fraud." 12 Johns. 232.

"The principles of the common law are to be understood with the limitation,

Nov. Term,
1859.

THE MICHI-
GAN, &C.,
RAILRO'D CO.
v.
BIVENS.

that there is no special contract between the parties, which varies the general obligation of carriers; for if there clearly appear such a contract, it governs the case." Ang. on Car., § 220.

"The undertaking of a common carrier to transport the goods to a particular destination, necessarily includes the duty of delivering them in safety; and his obligation is to deliver safely at all events, excepting the goods be lost by the act of GOD, or the public enemy. It is not enough, that the goods be carried in safety to the place of delivery, but the carrier must, and without any demand upon him, deliver; and he is not entitled to freight until the contract for a complete delivery is performed. It appears, therefore, to be of importance to consider what is requisite to constitute a complete delivery, or such a delivery as will determine the transit and dissolve the carrier's liability. This, in a great measure, is left to the jury to determine." Id., § 282.

"The carrier is bound, in all cases, to make a proper delivery, with reasonable expedition, if no particular time be fixed upon." Id., § 283.

"If the goods are tendered to the consignee late in the day, after business hours, the consignee is not bound to receive them at such time, and it is the duty of the carrier to keep them still in his custody, and he is responsible as carrier." Id., § 287.—Hill v. Humphreys, 5 Watts and Serg. 123.—Eagle v. White, 6 Whart. 505.

"The responsibility of a common carrier on the Ohio river, does not cease, it has been held, by delivery of the goods on the wharf, and notice given to the consignee; but the duty of the carrier is to attend to the actual delivery." Hemphill v. Chenie, 6 Watts and Serg. 62.

Landing cotton on a wharf in Charleston, South Carolina, was held not a delivery, it not being made so by usage. Galloway v. Hughes, 1 Bail. 553.

In the absence of usage to the contrary, it has been held in Vermont, that a delivery of goods on the wharf is not necessarily a delivery to the wharfinger. Blin v. Mayo, 10 Verm. 60.

"The doctrine in respect to all commercial usage is, that to have it take the place of general law, it must be so uniformly acquiesced in by length of time, that the jury will feel themselves constrained to say, that it entered into the minds of the parties, and made a part of the contract." Rushforth v. Hadfield, 7 East, 224.—Gibson v. Culver, 17 Wend. 305.—Ang. on Car., § 301.

"In Michigan it (notice) is required; and the liability of the company, as a common carrier, continues until it is given." Pierce on Am. Railr. Law, 451. —The Michigan Railroad Co. v. Ward, 2 Mich. R. 538.

"Actual notice is required in Georgia, unless dispensed with by usage." The Rome Railroad Co. v. Sullivan, 14 Geo. R. 277.

And see Pierce on Am. Railr. Law, 449, tit. Notice to the Consignee—Whether it is the duty of the company to give notice of the arrival of the goods to the consignee, is an unsettled question. The idea would have been more truthfully expressed, by saying, that the duty of the company to give notice of the arrival of the goods to the consignee, is not an unsettled question; for it is a settled common-law liability; but by a species of judicial legislation in a few instances, certain judges have assumed to themselves the power of unsettling this well established liability—not for the benefit of the public, but for the purpose of increasing the franchises and immunities, and enhancing the profits of railroad companies to a degree never contemplated by the legislature that created them; and thereby exonerating them from duties and responsibilities

which are required of every other common carrier, in every civilized government where the common law prevails. The effect of thus exonerating railroad companies from giving notice to the consignee, is too serious in its consequences to ever become the settled law in *Indiana*. Such exemption would expose the merchandise and property of the country, conveyed by railroads, to innumerable frauds, embezzlements, and larcenies; which would be committed by irresponsible employés and others, and, in a majority of instances, it would deprive the owner and consignee of his property, and subject it to the caprices of the employés of the company, and to the frauds of irresponsible persons, to whom the bailor would, under no circumstances, willingly consent to entrust his property, and leave him without adequate remedy, or so surround his means of redress with unjust and embarrassing difficulties, as to amount to a total loss. Public policy, public justice, our constitutional requirements, imperatively commanding that our laws shall be uniform, forbid, in unmistakable language, any such invidious change in the law, thus specially favoring railroad companies as common carriers.

The legislature of *Ohio* has secured the rights of her citizens against any such rulings in her Courts in favor of railroad companies; and we trust that *Indiana* may never be necessitated, by the ruling of her own Supreme Court, to follow this example of her sister state.

Nov. Term, 1859.