MILLS *et al. v.* NATIONAL S. S. CO.

*(City Court of New York, General Term.* May 31, 1889.)

CARRIERS OF GOODS—LIABILITY FOR INJURIES.

The consignee of goods cannot refuse to accept them when tendered by the carrier because they are damaged, and then sue the carrier for their value. His action is for damages to the goods during the transportation.

Appeal from trial term.

Action by Albert D. Mills and another against the National Steam-Ship Company for the non-delivery of certain goods. Defendant appeals from a judgment entered on a verdict in favor of the plaintiffs.

Argued before McADAM, C. J., and NEHRBAS and HOLME, JJ.

*John Chetwood,* for appellant. *Arnoux, Ritch & Woodford,* for respondents.

PER CURIAM. The plaintiffs purchased from John S. Townsend & Co. of London, England, through their agents in New York, 1,000 frails of dates. They were to be. thereafter shipped from London. Subsequently John S. Townsend & Co. shipped the dates on board of the steamer Canada, of the defendant's line. On the arrival of the dates in New York, 99 frails were broken, and the dates representing this number of frails when they were put upon the dock were in such an irregular condition that the plaintiffs would not accept them. They thereupon brought this action for the non-delivery of the 99 frails. The evidence shows without contradiction that dates representing the 99 frails were tendered to and refused by the plaintiffs, and the question is whether an action in this form for non-delivery can, under these circumstances, be maintained. The defendant was not bound to make personal delivery of the dates to the plaintiffs. Notifying them of the arrival of the vessel, separating their consignment from the rest, putting the goods within their control, and offering them, was a sufficient tender to discharge the owners of the vessel from liability. The action, as before stated, is for the non-delivery of the dates tendered, by reason of which failure to deliver it is alleged that the 99 frails of dates were "wholly lost" to the plaintiffs. We think the plaintiffs ought to have accepted the delivery tendered, and, if aggrieved, should have sued the defendants for breach of duty, *i. e.*, negligence in the carriage, in which action the loss might have been compensated for without a total abandonment of·the property to the defendant. The defendant did not appropriate the dates to its own use, and was guilty of no wrongful act concerning them, unless it be an act of negligence, and in an action for breach of duty may be shown in defense the existence of any of the things which by the terms of the bill of lading exempt it from liability. In this case, the trial judge ruled out all evidence tending to excuse the condition of the goods and instructed the jury "that if the defendant carried over and tendered to these plaintiffs the thousand frails, including the 99 that are missing, as is claimed, no matter whether the packages were in good or bad condition, it would relieve the defendant from liability." As the fact of carrying over and tendering the whole 1,000 frails (99 in an irregular condition) was established and not disputed, the defendant, on the evidence, and under this charge, ought to have had a verdict. In addition to the proof of tender of the 99 frails, application was made on behalf of the plaintiffs to the collector of the customs for an allowance for the damage to these same irregular

dates, so that the fact that the 99 frails arrived may be accepted as undeni-able. The plaintiffs seem to have proceeded on the mistaken theory that be-cause the defendant failed to tender the 99 frails of dates in good condition, it made itself liable to pay to them not the damage actually done, but the entire value of the dates at the port of delivery, and the verdict rendered by the jury is founded on this erroneous view of the law. A party guilty of a breach must repair the damage; no more. The party whose goods are dam-aged should alleviate the loss, and make it as small as possible, and is as a rule entitled to recover only to the extent of the actual injury. A person em-ployed to carry a hat to the hatter's to be ironed, may recover for any negli-gent injury to it while in transit, but he cannot, on account of the injury, abandon the hat to the carrier, and recover its full value. We can see no practical distinction between the two cases. If the person intrusted with the hat keeps it, and refuses to give it up, a different question is presented. For these reasons, the judgment must be reversed, and a new trial ordered, with costs to abide the event.