C. D. PARSONS, Appellee, v. THE UNITED STATES EXPRESS
COMPANY, Appellant.

**Carriers:** INJURY TO PROPERTY IN TRANSIT: MEASURE OF RECOVERY.

1   Unless property is totally destroyed or converted while in transportation the carrier is not liable for its full value as for conversion, but the remedy is for injury to the property because of a breach of the contract of carriage; and an erroneous instruction authorizing recovery of full value as for conversion instead of damages for injury to the property, as in this case, was not cured by another instruction that, unless the property was wholly worthless for the purpose for which it was intended plaintiff could not recover.

**Same.**   The measure of recovery for property injured while in transit is the difference between its market value when delivered to the carrier and when it reached its destination.   And where the carrier undertakes in good faith to repair property injured in transit, the fact that the same when delivered is in a condition rendering it worthless for the purpose intended, but with a moderate expenditure can be put in such repair as to render it as useful as before the injury, the shipper can not abandon the property and sue for its value, but is confined to an action for damages.

*Appeal from Oelwein Superior Court.*—HON. M. D.
PORTER, Judge.

WEDNESDAY, DECEMBER 15, 1909.

ACTION at law to recover damages for injuries done to a peanut roaster and corn popper while in defendant's possession as a common carrier.   Trial to a jury, verdict and judgment for plaintiff, and defendant appeals.—*Reversed.*

*Mullan & Pickett,* for appellant.

*W. B. Ingersoll,* for appellee.

DEEMER, J.—On or about June 24, 1907, plaintiff delivered to defendant at Oelwein, Iowa, for shipment to Streator, Ill., a corn popper and peanut roaster. Transportation charges were paid by plaintiff, and defendant undertook to carry the machine to its destination. During the course of transportation the machine was damaged, and when it reached Streator, Ill., plaintiff and defendant agreed that defendant should send to the manufacturer for the broken parts which, upon receipt at Streator, should be put upon the machine, in place of the broken ones, by plaintiff. As the parts were not shipped promptly defendant undertook to have the machine repaired by shipping it to Chicago and plaintiff was notified that he might go to his home, Oelwein, and await the receipt of a notice of the repair of the machine. The popper and roaster was returned to Streator and plaintiff notified thereof on July 4th. He immediately went to Streator, and when he arrived there found that while an attempt had been made to repair the breakage, that this had not been fully accomplished. He notified the defendant of the defects and defendant agreed to send it back for further repairs. This agreement was made on a certain Friday and the machine was returned the next succeeding Sunday, plaintiff again returning to his home at Oelwein pursuant to defendant's suggestion. About July 22d, plaintiff was again notified of the return of the machine to Streator, and that it had been fully repaired. On the next day, the 23d of July, plaintiff was again at Streator, pursuant to notice, and as he says, again found that the defects had not been repaired and that it could not be made to work. Plaintiff then refused to receive the machine, claiming that in its damaged condition it was, and is, wholly worthless for the purpose intended. He thereupon commenced this action to recover the value of the machine and damages for loss of time due to his inability to operate the roaster. The defendant denied any conversion of the machine. claimed that plaintiff

refused to receive it when tendered to him after it had been repaired the second time, and that it held the property subject to plaintiff's orders. It also claimed that it repaired, substantially, all the damage and that when offered to plaintiff it was in as good condition as when it received it at Oelwein.

The following instructions indicate the theory on which the case was submitted to the jury:

(3) In order for plaintiff to recover it is necessary for him to establish by a preponderance of the evidence that the machine in question was delivered to the defendant in good condition and that defendant accepted the same for transportation from Oelwein to Streator; that said machine was damaged while in transit, and that· when it arrived at its destination it was in a wholly worthless condition for the purposes for which it was intended, and has ever since remained in such condition. (4) If you find from a preponderance of the evidence that the plaintiff delivered the machine to the defendant in good condition for transportation at Oelwein, Iowa, for delivery to him at Streator, Illinois, and that the same was accepted by defendant for transportation, and if you further find that the same was damaged while in transit, and at the time of the attempted delivery to plaintiff at Streator, Illinois, said machine was by reason of such damages in a wholly worthless condition for the purposes for which it was intended, then your verdict should be for plaintiff, and if you do not so find your verdict should be for defendant. (5) In case you find for the plaintiff you should allow him as damages the value of the machine as shown by the evidence at the time the same was accepted by the defendant at Oelwein, Iowa, for transportation to Streator, Illinois, but in any event not exceeding $450.00, with interest at six percent on such amount as you may allow, from June 26, 1907. But you are to allow nothing for loss of time or money expended.

The defendant insisted upon the trial and now contends that the trial court was in error in submitting the

case on the theory of a conversion; that its liability, if any, is for damages, to be measured by the difference between the value of the machine when received by it at Oelwein and its value after being repaired the second time, and that in no event is plaintiff entitled to recover on the theory of a conversion. The petition is ambiguous. It charges that defendant so neglected its duty as a common carrier that the property was wholly lost to plaintiff, to his damage in the sum of $450.

While on the witness stand plaintiff gave the following testimony:

Q. State whether or not, this second time when you went there, you found the machine, after receiving the second notice, it could be operated for the purpose for which it was intended. (Objected to by defendant as incompetent and calling for a conclusion of the witness. Objection overruled.) A. It could not; no, sir. Q. You may state whether or not this machine in the condition in which you found it at the time you first saw it at Streator, Illinois, was of any value—that is, at the time you saw it after the injury was received, was it of any value for the purpose for which it was intended? (Interrogatory objected to by defendant as incompetent and not calling for the proper measure of damage in this action. Objection overruled. Defendant excepts.) A. It was absolutely no good. Q. State whether or not, at the time when you saw it, I think, on the 7th day of July, was it? A. 5th. Q. 5th of July, was it any value for the purpose for which it was intended? (Objected to by defendant as immaterial, irrelevant, incompetent, and as not tending to establish any measure of damages recoverable in this action. Objection overruled. Defendant excepts.) A. No, sir. By the term, 'no value,' I mean that the machine was of no value for the purpose for which it was supposed to be made for. Q. You may state whether or not on the 23d day of July, at the time you went to Streator in response to the second notice, the machine was of any value for the purpose for which it had been intended, at that time? (Objected to by defendant as immaterial, irrelevant and not tending to establish the proper measure of damages. Objection overruled. De-

fendant excepts.)    A.    It was absolutely no good for the
purpose for which it was intended at that time.

Notwithstanding these conclusions of the witness, he
testified:

I then went to Streator and saw the machine in the
freight room of the Chicago & Alton Railway.    There was
gasoline put in the tank, but the tank leaked and it ran out.
The tank was made of tin or sheet iron.    I think of tin.
Soldered together.    I did not have the leak repaired.
There was a fire started under the boiler, and the engine
was operated.    The tank on the machine is a little gaso-
line tank very much of the same nature as the tank on a
gasoline stove.    I think it holds about two gallons.    The
case is where you pop your corn.    It is a square case, I
think twenty-two by twenty-six inches, or something like
that.    It sets on over the boiler on top of a frame, and is
held in place by four little rods that run down on sheets of
metal, and there are four screws; two on each side.    The
case had been pulled off this way.    It is made of glass and
wood, and is lined with zinc and copper.    The glass and
wood were not broken.    The condition of the case would
affect the running of the machine because from the top of
the case you have a pulley that runs down by a belt to an-
other pulley head so that when you get it out of plumb
you can not operate it.    It would probably have taken about
two days or two days and a half labor to put it in repair.
The labor would cost about $4.50 a day.    A tinner, if he
had had everything ready, could have soldered the tank up
in about fifteen minutes.    The top is covered with canvas
about eight or ten feet long by two and one-half wide.    A
new canvas would cost $25.    The supply tank under the base
of the machine was jammed.    There was quite a little dent
in it.    I don't know whether it would hold water or not,
and the paint was knocked off from the machine in some
places.    That would not interfere with its running.    The
front brace had not been straightened.    It was of wrought
iron, I suppose.    I don't think it could have been straight-
ened while on the machine.    I think it is riveted onto the
machine.    The braces which had been put under the engine
had not been painted.    That did not affect the running of

the machine, only the looks. The paint on the parts of the machine which had been repaired did not match the other paint.

Defendant produced many witnesses who testified that after the machine had been repaired the second time it was in as good condition or practically in as good condition as when it was received by the defendant. And other witnesses testified that when finally offered to plaintiff there was nothing the matter with it save a leak in the gasoline tank and a few small holes in the canvas top. Experts also testified that its value in the market, after being repaired, was not less than when delivered to the express company. Substantially this is the entire record; and the result of the trial was a verdict and judgment for plaintiff in the sum of $350. There is no testimony in the case which would justify a recovery on the theory of a conversion of the property by the defendant.

No matter what its negligence as a carrier, this negligence is not conversion. On principle and according to the uniform tenor of the authorities (*Clark v. Am. Express Co.*, 130 Iowa, 254, and cases cited),

1. Carriers: injury to property in transit: measure of recovery.

unless goods entrusted to a carrier are totally destroyed or actually converted by it the shipper is not entitled to recover the full value of the goods. His remedy is for damages growing out of a breach of the contract of carriage or of a duty owing by the carrier to all persons whom it undertakes to serve. Even though the goods be badly damaged the shipper is not justified in abandoning them or in charging the carrier with their full value. *Gulf Co. v. Pitts,* 37 Texas Civ. App. 212 (83 S. W. 727); *Gulf Co. v. Everett,* 37 Texas Civ. App. 167 (83 S. W. 257); *Mich. Co. v. Bivens,* 13 Ind. 263; *Brand v. Weir,* 27 Misc. Rep. 212 (57 N. Y. Supp. 731); *Mills v. National Steamship Co.* (City Ct. N. Y.) 5 N. Y. Supp. 258; *Corso v. Ry. Co.,* 48 La. Ann. 1286 (20 South. 752-757); *Silverman v. Ry. Co.,* 51 La.

Ann. 1785 (26 South. 447-451); *Dudley v. R. R.,* 58 W.
Va. 604 (52 S. E. 718, 719, 3 L. R. A. (N. S.) 1135,
112 Am. St. Rep. 1027.)

In view of these well-established principles it is mani-
fest that the trial court was in error in giving the fifth
paragraph of its charge. Under the rule there announced
plaintiff was entitled to recover the full value of his ma-
chine, even though the actual damage sustained may have
been slight.

It is argued, however, that this instruction should be
construed with three and four, which precede it, and that
when so construed no prejudice resulted to defendant in
that plaintiff was not entitled to recover at all unless he
showed that the machine when offered him, after the second
attempt to repair, was in a wholly worthless condition for
the purpose for which it was intended. It is true that
paragraphs three and four of the charge state that unless
the machine was in a wholly worthless condition for the
purpose for which it was intended at the time it was finally
offered to plaintiff there could be no recovery; but we do
not think that these instructions cured the error in the
fifth instruction, or that they properly submitted the case
to the jury upon the testimony adduced.

We have set out plaintiff's testimony regarding the
value of the machine and its value for the purpose for
which it was intended, and it may be that if this were the
entire record we might say that no prejudice
resulted; but it is apparent from a reading
of the entire record that what the witness intended to say
was that without some repairs the machine could not be
made to work. He proceeded to state what was necessary
to be done to make it work and to repair the defects, and
the items given by him were small, and the work and ma-
terial not hard to obtain. The machine in its then condi-
tion may have been worthless for the purpose intended,
and yet with a moderate expenditure have been so repaired

2. SAME.

as to render it as useful as it was before the injury. Defendant, in good faith, and with plaintiff's knowledge and consent, did everything it could to repair the breakage and defects, and plaintiff was not justified in abandoning or refusing to accept it because it did not work perfectly when offered him for trial. It was his duty to accept it and bring action for his damages. He could not abandon the machine because it would not work unless it was wholly worthless for any purpose. If it could have been repaired so as to make it do the work for which it was intended, it was plaintiff's duty to accept it and sue for his damages. He was not justified in refusing to accept it and holding defendant for its full value when received. There is no testimony that the machine was wholly worthless for any purpose. Indeed plaintiff's testimony seems to indicate that it could have been repaired at moderate expense and made to perform the service for which it was intended. Under the instructions plaintiff was entitled to recover the full value of the machine if he showed that in the condition in which it was tendered to him it would not perform its functions and was, in this sense, in a worthless condition for the purposes for which it was intended.

Defendant's theory of the case was not presented, and as submitted a jury was likely to understand that plaintiff was justified in abandoning the machine if it would not work when tendered to him. There is a manifest distinction between a machine which is wholly worthless for any purpose and one which is in a worthless condition for the purposes for which it was intended. Defendant was entitled to have the case submitted upon a proper theory and to the verdict of a jury upon the amount of plaintiff's damage, which was the difference between its value when delivered to the express company for shipment and its value when finally tendered to plaintiff at its destination. This theory was not submitted to the jury, and in this, we think, there was error. We are also of opinion that the

error in the fifth instruction was not cured by any of the prior ones.

Some of the rulings on plaintiff's testimony, which has heretofore been set out by question and answer, are doubtful, to say the least. It will be noticed that the witness is not asked as to the market value of the machine at the times inquired about. The questions were as to values for the purposes for which the machine was intended. This is quite a different thing from market value of the machine in its then condition. That the witness had in mind its operative value and not its market value in its then condition is quite clear when the entire record is examined. We have said enough to indicate our views and to guide the court upon a retrial of the case. Our conclusions find support in the following, among other cases: *Redmon v. R. R.*, 90 Mo. App. 68; *Corso v. R. R.*, 48 La. Ann. 1286 (20 South. 752); *Galveston v. Van Winkle*, 3 Willson Civ. Cas. Ct. App. (Tex.) section 443.

The judgment must be, and it is, *reversed*.