CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* BEMENT-REA COMPANY.

[No. 12,406. Filed November 23, 1926. Rehearing denied February 1, 1927. Transfer denied April 19, 1927.]

1. CARRIERS.—Where goods intrusted to a carrier for transportation to a consignee are damaged, the owner's remedy is for damages for the injury and not for the value of the goods. p. 70.
2. CARRIERS.—*Consignee cannot refuse to receive goods damaged in shipment unless damage substantially changes character of goods.*—Before a consignee can refuse a shipment of goods that have been damaged by reason of the negligence of the carrier, the damage must be such as substantially changes the general character of the goods so as to leave them unfit for the purpose for which they were intended. p. 70.
3. CARRIERS.—*Consignee's remedy when part of shipment of sugar was wet.*—Where ninety bags of a consignment of 600 bags of sugar were wet when the shipment reached its destination, the consignee's remedy was to receive entire shipment and present a claim to the carrier for the damages. p. 71.

From Sullivan Circuit Court; *Arthur E. DeBaun,* Judge.

Cleveland, etc., R. Co. *v.* Bement-Rea Co.—86 Ind. App. 67.

Action by the Bement-Rea Company against the Cleveland, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for the plaintiff, the defendant appeals. *Reversed.* By the court in banc.

*Frank L. Littleton, Forrest Chenoweth, Hays & Hays* and *Beasley, Douthitt, Crawford & Beasley,* for appellant.

*Cooper, Royse, Bogart & Gambill* and *Charles D. Hunt,* for appellee.

McMAHAN, C. J.—Complaint by appellee to recover damages by reason of the alleged failure of appellant to deliver a carload of sugar shipped from New York to Terre Haute, and consigned to appellee. The court found the facts specially and concluded, as a matter of law, that appellee was entitled to recover $7,365.69. The judgment followed the conclusion of law, and this appeal followed. It appears from the special finding that appellee purchased a carload of sugar (600 bags) from a manufacturer in New York and the same was shipped by rail over appellant's railroad and that of a connecting carrier. The sugar arrived at Terre Haute August 23, 1920, and appellee started to remove it from the car to its warehouse. One hundred twenty bags were removed, when it was discovered that some of the sugar was wet. As soon as appellee discovered that part was wet, it notified appellant of that fact and that it was returning the wet sugar to the car. Appellee refused to accept any of the sugar which it claimed was damaged, and claimed the right to accept the part which it considered not damaged, and to refuse to accept that which it claimed was wet, and was at all times ready and willing to accept the part not wet. Appellant refused to allow appellee the privilege of taking a part of the sugar and rejecting that which it claimed was damaged. Appellant tendered appellee the entire

shipment, which appellee refused to accept, and appellant refused to permit appellee to take the undamaged part of the sugar and leave the wet sugar. After appellee refused to take the damaged sugar, appellant shipped the entire carload to Indianapolis and stored it in its warehouse, where it remained until March 10, 1921, when the parties entered into an agreement to ascertain what part was salable to the grocery trade at the market price as first class sugar. Appellee agreed to take that part which was found to be first class and credit appellant with the market price. Appellant agreed to take that part unsalable as first class and to pay appellee therefor the market price in New York on August 23, 1920, which was agreed to be $19.80 per 100 pounds. This agreement was not to affect the legal right of either party.

When the examination was made, it was found that ninety bags of the sugar were wet and damaged on August 23, 1920, and appellant paid appellee therefor $1,922.80 and retained the ninety bags, which it later sold for $598.05. The remaining 510 bags were then shipped to appellee, and, on March 14, 1921, were accepted and unloaded by appellee, the market price of the sugar so received by appellee at that time being $8.637 per 100 pounds. The ninety bags were not damaged so as to render them of no value, but had a real and substantial value at all times of not less than seven cents a pound.

There is no controversy as to the amount of the judgment in case appellee is entitled to a recovery. Appellant's contention is that appellee is not entitled to a judgment for any sum. It insists that, where a shipment is merely damaged, it is the duty of a consignee to accept the shipment as an entirety from the carrier, and then seek his remedy through a claim for damages to the damaged portion.

In *McGrath Bros.* v. *Charleston, etc., R. Co.* (1912), 91 S. C. 552, 75 S. E. 44, 42 L. R. A. (N. S.) 782, Ann. Cas. 1914A 64, cited by appellee, two lengths of steel shafting and other hardware were shipped and, on arrival, the shafting was found to be damaged so that it was useless and of no value, except for old iron. The consignee evidently accepted the hardware and refused to accept the shafting, and later sued for the value of the shafting. The only question before the court was the measure of damages to the shafting. The right of the consignee to reject the whole shipment was not involved. In discussing the measure of damages, the court said: "While there can be no doubt that, if the shafting in its bent condition had a substantial value, the consignees were bound to receive it and give the carrier credit for the net amount realized from its due disposition." The bent shafting having no substantial value, the consignee was not required to receive it.

Where goods intrusted to a carrier for shipment are injured only, the owner's remedy is for damages for the injury and not for the value. *Dudley* v. *Chicago, etc., R. Co.* (1906), 58 W. Va. 604, 52 S. E. 718, 3 L. R. A. (N. S.) 1135, 112 Am. St. 1027: "Even though the goods be badly damaged, the shipper is not justified in abandoning them or in charging the carrier with their full value." *Parsons* v. *United States Ex. Co.* (1909), 144 Iowa 745, 123 N. W. 776, 25 L. R. A. (N. S.) 842.

Before a consignee can refuse to receive a shipment of goods, the damage must be such as substantially changes the general character of the goods so as to leave them unfit for ordinary purposes, such as might happen to fruit which had been frozen during transportation by reason of negligence of the carrier. See *Hackett* v. *B. C. & M. Railroad* (1857), 35 N. H. 390. In *Gulf, etc., R. Co.* v. *H. B. Pitts &*

# NOVEMBER TERM, 1926.    71

Cleveland, etc., R. Co. *v.* Bement-Rea Co.—86 Ind. App. 67.

*Son* (1904), 37 Tex. Civ. App. 212, 83 S. W. 727, where a carload of chops was injured in transit by wetting, the fact that the consignee was in the wholesale trade, to which the chops in their damaged condition were unsuitable, did not entitle him to refuse to accept them and sue the carrier for their original value. In answer to the contention of the consignee that he was justified in refusing the chops, the court said: "As a general rule the fact that the goods are injured in transportation, for which the carrier is responsible, does not justify the consignee in refusing to receive them, but he must accept them, and hold the carrier responsible for the injury."

The rule is thus stated in Hutchinson, Carriers (3rd ed.) §1365: "As a general rule, the doctrine that where goods are injured the owner may abandon them as for a total loss and sue for their value does not apply to contracts of affreightment. The fact, therefore, that the goods are injured upon the journey, through causes for which the carrier is responsible, does not of itself justify the consignee in refusing to receive them, but he must accept them and hold the carrier responsible for the injury. Where, however, the damage is such that the entire value of the goods is destroyed, the consignee may refuse to receive them and sue the carrier for their value."

We hold it was appellee's duty to have received the whole carload of sugar and then brought suit to recover damages because of the damaged sugar. If it 3. had done this, it would have suffered no loss on the 510 bags of sugar that was not damaged. This being true, the court erred in its conclusion of law.

Judgment reversed, with directions to restate the conclusion of law in favor of appellant and to render judgment accordingly.

Cleveland, etc., R. Co. *v.* Bement-Rea Co.—86 Ind. App. 67.

ON PETITION FOR REHEARING.

McMAHAN, C. J.—In stating the facts as found by the court, we failed to state that appellee was engaged in the wholesale grocery business. Appellee also says the finding shows the sugar was purchased for resale by it to the wholesale grocery trade, and that its contention at the time it returned the wet sugar was that such sugar was wet and in an unsalable condition. The facts as found by the court are not just as appellee contends.

There is no finding that the sugar was bought for resale by appellee to the "wholesale trade." The court simply found that, when appellee started to unload the sugar, it discovered that part of the sugar was wet and that it then "made the claim that a part of said carload of sugar was wet and damaged, and then and there refused to receive or accept any part of said sugar which plaintiff (appellee) claimed was damaged, but claimed the right to accept and receive only the part of said sugar" which it "considered was not wet or damaged, and to reject and refuse" that which it claimed was wet or damaged. The court did not find that appellant at that time made any claim concerning the condition of the sugar. The court simply found that, when the controversy arose, appellant "refused to allow the plaintiff the privilege of taking a part of said sugar only and rejecting and refusing that part thereof which plaintiff claimed was wet or damaged."

Appellee refers to a statement in the agreement between the parties entered into in March, 1921, reciting that appellee at that time claimed part of the sugar was damaged and in an unsalable condition at the time of the delivery, and that appellant, at the time of entering into the agreement, claimed the sugar was not damaged and was in a salable condition at the time of delivery,

which was in August, 1920. The agreement which the parties entered into in March, 1921, provided that they should each appoint one person to examine the sugar and ascertain "what part is now salable as granulated sugar in the grocery trade at market price as first class granulated sugar."

The court found that upon examining the sugar, it was found that ninety bags "were damaged at the time" it was received at Terre Haute in August, 1920; that appellant kept the ninety bags, paying appellee $1,922.80 therefor, and that it subsequently sold the ninety bags for $598.05.

The court did not find the wet sugar was unsalable by appellee or that it was of no value to appellee. Indeed, it would seem that in March, 1921, the ninety bags were worth almost as much per pound as the 510 bags of undamaged sugar, as the parties agreed that, at that time, the 510 bags were worth 8.637 cents per pound, while the court found the ninety bags were all the time worth not less than seven cents per pound.

Rehearing denied.