Jackson Co., Inc. *v.* P. R. R. Co., Appellant.

Argued October 12, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Charles Woods Coulston,* and with him *J. Howard Rhoads,* for appellant.

*Albert H. Friedman,* and with him *Peter P. Zion,* for appellee.

Opinion by Keller, J., April 16, 1934:

This was an action in assumpsit, tried before a judge without a jury. It was brought to recover the damages alleged to have been sustained by the plaintiff through the negligence of the defendant in transporting a carload of celery from Washington to Philadelphia, by reason of which the celery decayed and deteriorated in value $359.80.

The car, containing 350 crates of celery, was loaded by Florida Vegetable Corporation and delivered to Atlantic Coast Line Railroad on March 3, 1925, at Brissons, Florida, to be carried and delivered to the shipper at Potomac Yards, Virginia. The bill of lading specifically provided "Do not re-ice in transit. See Rule 240 P. P. Tariff No. 2"; thereby relieving the railroad company of any duty relative to seeing that the bunkers were kept filled with ice. Plaintiff's own witness testified that under Rule 240 the railroad company is "not obliged nor supposed to replenish the ice," and there would be no occasion for it "to

make any inspection of the condition of the contents of the bunkers.'' A witness for plaintiff testified that the celery was packed by the shipper in the field, brought in and put through a pre-cooling plant, and loaded in a refrigerator car, equipped with bunkers, which were filled with ice, and hatch covers and plugs over ice bunkers closed. He said that this has been found to keep celery in good condition for the ordinary time needed for transit; and obtained a lower cost to the shipper than when the railroad company is required to re-ice during transportation.

The car of celery was sold in transit to the plaintiff. It arrived at Potomac Yards of the Richmond, Fredericksburg and Potomac Railroad at 1:40 o'clock A. M. on March 7, 1925. It remained there until 3:00 o'clock P. M. on March 10, 1925, when it was delivered to the defendant by the Richmond, Fredericksburg and Potomac Railroad pursuant to a diversion order of the plaintiff, (received by it an hour previously), for carriage and delivery to the plaintiff at 30th and Market Streets, Philadelphia. It arrived at 30th and Market Streets, Philadelphia, at 8:40 o'clock P. M. on March 11, 1925. The plaintiff was duly notified and ordered the car unloaded, which was done, beginning at 12:40 A. M. and finishing at 1:15 A. M. on March 12, 1925. The uncontradicted evidence is that when the car was delivered by the Richmond, Fredericksburg and Potomac Railroad to the Pennsylvania Railroad at Washington on March 10, 1925 the hatches were closed and the plugs tight.

As this shipment was made two years before the Amendment of March 4, 1927, (c. 510, sec. 3, 44 Stat. 1448) to section 20 of the Transportation Act of February 4, 1887, (c. 104, 24 Stat. 386 and its amendments), the law prior to the amendment of 1927 applies, and the defendant company, the delivering car-

rier, can be held responsible only for negligence in handling the car on its own line.

We have read the evidence in the case carefully and find no competent evidence of negligence or default on the part of the defendant which would justify a submission of the case to a jury, or sustain a finding against it by a judge sitting without a jury.

The evidence is undisputed that the defendant received the car at Washington on March 10th at 3:00 o'clock P. M. and delivered it at 30th and Market Streets, Philadelphia, on March 11th at 8:40 o'clock P. M. and that this was a proper and reasonable time for transporting the car. The plaintiff does not claim that there was any unreasonable delay in transportation. He could scarcely do so with good grace for he himself kept the car in the Potomac Yards awaiting diversion orders for three days and a half as against the day and a quarter consumed in transporting the car from Washington to Philadelphia.

The plaintiff's whole case is based on the assumption that the defendant company negligently opened the hatches and plugs after the car came into its possession, and that the warmer outside air coming into the car through these openings caused the ice to melt and the celery to decay and deteriorate; but there is no competent proof on which to base the assumption. The evidence of plaintiff's witness, Cooper, that an adjuster of the defendant company, who was dead at the time of trial, had informed him, "that in and out of Baltimore the vents were closed and inspection of the bunkers showed about one-quarter full," was wholly hearsay, and incompetent, and should not have been received in evidence over the defendant's objection. It was, moreover, contradicted by the positive evidence of defendant's witness, that the car did not stop at all in Baltimore.

The report of Goodwin, who inspected the celery

for the plaintiff, which was received in evidence with the same effect as if he had testified to its contents, did not set forth when the inspection was made, beyond that it was on the "A. M." of March 12th, nor whether made before or after the celery was unloaded. Mr. Jackson, the president of the plaintiff company, testified that he first saw the celery at six o'clock in the morning of March 12th, after it had been unloaded, and that he did not know whether it was inspected by Goodwin, before or after it was unloaded. The condition of the hatches and plugs after the celery was unloaded would be immaterial. Mr. Jackson also testified that for the celery to have become in the condition in which he found it on the morning of March 12th— provided it had been properly packed, precooled and shipped with the bunkers full of ice on March 3d—the vents would have to have been open probably three or four days; and when the celery was inspected by Goodwin the outside temperature was 36 degrees as against the temperature of the car, 54 to 56 degrees.

There was therefore no competent evidence whatever to sustain a finding that the defendant company was negligent in the handling of this car or that the deterioration of the celery and its resultant damage was due to or chargeable against the defendant.

The plaintiff, however, invokes the rule applied by this court in Vuille v. Penna. R. R. Co., 42 Pa. Superior Ct. 567 and Wray, Moore & Co. v. American Ry. Exp. Co., 75 Pa. Superior Ct. 425, that when goods are shown to have been delivered to the first carrier in good order and are afterwards delivered by the last carrier in a damaged condition, it will generally, and in the absence of evidence to the contrary, be presumed that they were injured by the delivering carrier. The rule is confined to ordinary merchandise, which does not deteriorate from a cause not within the

control of the carrier. It has no application to perishable goods shipped under a contract which expressly relieves the carrier of the duty of examining or replenishing the bunkers with ice while in transit. In the Vuille case the merchandise shipped was an automobile which was in good condition when securely packed in the car in Florida and was in such a damaged condition on arrival at its destination at Huntingdon, Pennsylvania, as to be practically worthless. In the Wray, Moore & Co. case a shipment of cheese in boxes was made in Wisconsin consigned to the plaintiff at Altoona, Pennsylvania. The boxes were in apparent good order when received by the express company; were in transit from July 30 to August 21, and when delivered, the boxes were broken and the cheese unfit for sale. Judge LINN pointed out in the opinion in that case that the defendant had offered no evidence that the damage resulted "from a defect or vice in the property"; in other words, there was not only proof that the boxes had been broken, showing affirmative evidence of negligence, but, in addition, there was no evidence in the case that the goods were perishable and subject to inherent deterioration. In this case the perishable character of the shipment was frankly admitted.

The assignments of error are sustained. The judgment is reversed and is now entered for the defendant.