## BRONSTEIN v. PENNSYLVANIA R. R.

No. 20368.

District Court, E. D. Pennsylvania.

March 5, 1940.

Motions to Amend Findings and for New Trial Denied May 28, 1940.

Leon S. Rosenthal, of Philadelphia, Pa., for plaintiff.

Barnes Myers & Price by Robert V. Massey, Jr., all of Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge.

This is a suit by the consignee of 21 cars of various perishable agricultural commodities against the delivering carrier for damages for injuries to the products incurred in transportation. There are involved six cars of tomatoes, five of peaches, five of grapes, three of cauliflower, and two of lettuce. The same general considerations apply to all of these groups, and they need not be dealt with separately in this discussion. In all the cars, the products were packed in containers, variously designated as lugs (tomatoes), baskets (grapes and peaches), and crates (lettuce and cauliflower).

The defendant admits that, on delivery, there were a certain number of containers which were so badly damaged as to be practically unsalable and concedes that, if the Court finds the damage to have been due to negligence, it is liable to pay the fair average market value of the contents of such containers. The plaintiff's claim, however, is for a very much larger amount. It is based upon the theory (in support of which testimony was adduced) that in each of the cars the fruit or vegetables in a large number of unbroken containers had been bruised or otherwise damaged by shifting of the load and jars due to rough handling. This condition, though it sometimes showed up in the staining of the container by fruit juice, was frequently not discoverable until the containers were opened. The plaintiff's inspectors reported it in most of the cars, but there was no "check-out", and they made no count of those which, while intact, showed signs of internal injury to the contents. The defendant's inspectors reported only the number of broken packages. Both the plaintiff and the defendant made their inspections by having their men go into the cars when first opened and once or twice during unloading. I doubt that the inspectors could have seen more than half of the individual containers. So far as actual breakage was concerned, the plaintiff's testimony is not in material conflict with the count made by the railroad company's inspectors.

In most cases, according to the plaintiff's testimony, the products would be sold by samples, three or four of the best-looking containers being set out on the platform. Then, when the plaintiff's customer had taken away his purchase and opened the crates or baskets, he would find the type of damage referred to and would promptly notify the plaintiff. This usually resulted in an adjustment or reduction of the price, although, if there was real damage, the customer would have been within his rights in rescinding the sale. Of course, not all of the plaintiff's claim has this precise fact basis, but it is typical of a large amount of it. In no case did the plaintiff personally go to his customer and inspect the purchase, the ordinary practice being to take the customer's word and make the required reduction or as much of it as appeared to be good business.

The plaintiff was unable to produce any evidence, other than the prices so obtained, from which the Court could make any estimate of the amount of fruit or vegetables damaged in the manner described above, or the character or extent of the damage to any particular containers.

Possibly it might make the situation clearer if one or two typical cars are selected. PFE 50927 is a car which shows rather more than the average amount of breakage. The railroad inspection shows "Thirteen lugs set aside with broken sides. One of these show no damage, seven others minus $\frac{1}{4}$ to $\frac{1}{2}$ contents, apparent pilferage, others show few cracked or bruised tomatoes at point of breakage." And, "Few tomatoes on face have bruised area from being adjacent cover strips." The plaintiff's inspection in part shows "Some lugs show clipped or broken side slats and 8 to 16% bruising." Also, "Average 5% defects consisting of puffy angular or misshapen fruits. Some minor blemishes. Medium quality." This is about all the direct evidence that there is. The plaintiff's testimony shows that at average prices for tomatoes this car should have brought $2,262, that as a matter of fact he obtained $2,149.95 for it, and that that latter is the best price that he could have obtained. He therefore claims damages of $112.05.

PFE 31471 is a car as to which the evidence is distinctly less favorable to the plaintiff. He claims damages in the amount of $112. It was a car of tomatoes loaded and delivered to the originating carrier in Mexico on April 26, 1937. The only evidence as to its condition prior to the delivery to the defendant carrier is

the Government inspection, which took place at Nogales, Arizona, two days after it was loaded. This inspection showed a proper loading and icing of the car, but it is to be noted that it was restricted to the top layer of the load, and—an important item—it showed the load average only 75% U.S. 1 quality. The report is, "Defects 12% to 45%, averaging approximately 26%, consisting of 8% puffy, 4% soft ripe, 2% worm injury, balance mostly soft, scars, or slightly shriveled." The plaintiff's inspection agency reported an average of "12% soft rot. Many wet packs, stained and leaking condition." Also, "14% soft overripe." Also, "average 6% defects, angular, puffy stock or heavy scars. Medium quality. Very weak condition". (See Note.)

It is thus evident that in the case of this particular car, the price which the plaintiff was able to obtain has no traceable relation to the amount of physical damage which was done to the load in transportation. Both the plaintiff's and the defendant's inspection agencies, reported a large number of lugs wet and stained. There is no way of telling how far this condition was due to the overripe condition of the tomatoes when shipped. The only allowance which can be made is for the 17 lugs which were admittedly damaged in transportation and had to be rejected.

The plaintiff contends that the rule stated in Meltzer v. Pennsylvania R. Co., D.C., 29 F.Supp. 840, entitles him to recover the difference between the average market prices of the commodities in first class condition and the prices which he received. It must be pointed out, however, that the Meltzer case dealt with an entirely different state of the proof. The commodity involved in that case was watermelons. Both the plaintiff's and the defendant's inspectors observed and reported the condition of each melon as it was taken out of the car. There was evidence from which the Court could find the exact number of watermelons damaged in each car and the precise character and extent of the injury to each. The physical damage being thus established, the Court had to apply the general rule which is conceded to govern, that the correct measure of damages is the difference between the value of the damaged melons had they arrived in good condition and their value in the condition in which they did arrive. The difficulty in the Meltzer case was that the damaged melons were not sold separately from the sound ones, so that their value had to be found from evidence other than sales. The Court accepted the difference between the fair market value of watermelons in first class condition and the prices actually received for the "run of the mine" lots as sold as evidence of the loss in value of the damaged melons. This was perhaps a slight relaxation of the strict rule, but was justified by the necessities of the case and the selling methods which prevailed at the Philadelphia yards. The Court, however, in no case allowed the plaintiff a sum larger than the full market price of all the melons damaged, assuming that where the total loss on a car was greater than this it must be due to something other than the injury to the melons. It is important to note that the Court did not in the Meltzer case accept the plaintiff's loss on his sales as evidence of the amount of physical damage or the number of melons injured. That, of course, had to be proved first. The prices obtained were accepted merely as evidence of the full actual loss to the plaintiff.

In the state of the evidence of the present case, I cannot allow damages for more than the average market price of all the containers actually shown to have been injured. I cannot accept evidence of price adjustments made by the plaintiff with his customers, which, in most cases, were made entirely upon the customers' say-so, as evidence of damages not disclosed, except very vaguely, by either the plaintiff's or the defendant's inspection reports.

It is unnecessary to consider the question whether the claims on cars WFE 65959, URT 88262, and MDT 5161 were made within the limitation of the bill of lading, because there is no competent proof of any damage to containers in these cars. However, in order that the plaintiff may have the benefit of a finding, in the event of an appeal, I find as a fact and conclude as a matter of law that the claims as to these cars were made in time.

Judgment may be entered for the plaintiff in the amount of $469.49.

The foregoing opinion indicates my views upon the issues of law and fact involved in this case. The statements of fact may be taken as special findings and the statements of law as conclusions of law. In the event of appeal, it will probably be necessary to have separate findings

and conclusions, and if they so desire the parties may submit requests in accordance with what has been said in the opinion.

#### Note.

■ I fully agree with the defendant's contention that, in the case of delivery to the originating carrier in foreign countries, liability of the defendant is as it was at common law, that is, he is liable for injuries occurring to the cars on his own line. But even under the common law, the evidence of the Government inspection at some time reasonably close to the delivery of the load to the defendant may be taken as evidence of its condition when delivered to the defendant, and if it showed perfect condition the Court could find that the injury at the time of delivery was due to the negligence of the defendant. I do not think that Jackson Co. v. Pennsylvania R. Co., 112 Pa.Super. 535, 172 A. 20, forbids this application of the ordinary presumption of the continuance of any condition shown to have existed. The evidence in that case clearly indicated that the damage must have occurred by reason of the negligence of an earlier carrier.

#### Sur Plaintiff's Motions to Amend Findings and for New Trial.

I. The plaintiff complains of the following findings, contained in the opinion: "In no case did the plaintiff personally go to his customer and inspect the purchase * * *." I agree that there is no positive evidence that the plaintiff never personally went to a customer to inspect the purchase. Consequently, the finding is somewhat broader than the record warrants, though it might be permissible to infer that if there had been any inspections of the product, to verify damage claims, by the plaintiff or his agent after delivery to the customers, the plaintiff would have produced evidence to that effect. However, I have changed this finding to read, "There is no evidence of any specific case in which the plaintiff went to his customer and inspected the purchase * * *," which I believe is a correct statement.

■ II. The main ground upon which a new trial is asked for is that the plaintiff, as a result of some misapprehension, did not produce certain evidence which he avers he had at his command, going to show the amount of physical damage to the product—number of injured containers, extent of injury, etc., having reference particularly to the instances of injury to contents, as disclosed by staining or by the appearance of the product as seen through the slats of the containers.

Nothing in the stipulations as to evidence precluded the plaintiff from producing such testimony upon this point as he may have had. Nor, so far as I can recollect, was anything said or done to indicate that the scope of this Court's decision in the Meltzer case (29 F.Supp. 840) would be enlarged to allow the plaintiff to establish his case with less evidence than the plaintiff in that case had.

As was pointed out in the opinion, what is missing from the plaintiff's case here, is evidence from which the Court could find, with any semblance of accuracy, the quantity of commodities which may have suffered deterioration from pressure, shocks, or jars which might have bruised the content but left the containers intact. The disallowed part of the plaintiff's claim was for damages of that kind.

As a general rule, a new trial will not be granted merely because the plaintiff has, through some misconception of his rights, failed to develop his case as fully as he might have done. The matter is, however, discretionary, and, if I felt that any injustice would be done by refusing the application, I would be inclined to reopen the case and permit further testimony to be taken in a new trial. But if the testimony of the witnesses Feldbaum and Bronstein be read, it will appear that whatever evidence the plaintiff may have had as to the actual amount of physical damages must depend entirely on the recollection of these witnesses unsupported by any records or memoranda whatever. It was conceded that there was no check-out or piece by piece inspection of the containers as they were unloaded. In the Meltzer case, there was a check out and inspection of each individual melon. The cars in question were unloaded from two to four years ago. Obviously, whatever evidence the plaintiff might produce would of necessity be uncertain and unreliable, and it is very doubtful whether, if presented, it should or could be made the basis of a finding for damages against the carrier.

The motions are denied.