J. W. GARLINGTON v. FORT WORTH & DENVER CITY RAILWAY
COMPANY.

Decided January 16, 1904.

**1.—Market Value—Proof of.**

Where a commission merchant testified that his order for a car load of
potatoes at 60 cents per bushel f. o. b. at B. was based on the market price
at D., and that upon their arrival at D. in a damaged condition he sold them
at the best prices obtainable, stating the prices, and that for those not injured
he got the same price he was then getting for potatoes, this was sufficient
evidence of market value at D. to take the case to the jury, although the wit-
ness also testified that he "could not give definite figures as to the market
value of such potatoes at D., had they reached there on time."

**2.—Same.**

Plaintiff, the shipper, was also entitled to show that he had contracted
to sell the potatoes to the commission company at 60 cents per bushel f. o. b.
cars at B., the point of shipment,—not that such contract price was recover-
able, the defendant carrier having no notice of the contract, but as bearing
on the market price.

Appeal from the County Court of Montague. Tried below before
Hon. W. W. Cook.

*James A. Graham,* for appellant.

*Stanley, Spoonts & Thompson,* for appellee.

CONNER, CHIEF JUSTICE.—Appellant sued for damages alleged to
have been caused by unreasonable delays to a car of potatoes shipped
from Bowie, Texas, over appellee's line of railway to Denver, Colorado,
and has prosecuted this appeal from the judgment against him.

The shipment was made under contract with the Arenz Commission
Company of Denver to pay appellant 60 cents per bushel, f. o. b. car at
Bowie, for merchantable potatoes such as appellant testified these were.
The evidence tends to show, however, that on arrival at Denver the
potatoes were damaged, and said commission company refused to re-
ceive them as in compliance with the contract, but sold them on account
for appellant in an aggregate sum, including costs of sale, etc., of
$171.72 less than appellant would have received had they arrived at
Denver in the undamaged condition in which they were shipped.

H. H. Arenz, of said commission company, testified that he "could
not give definite figures as to the market value of such potatoes at
Denver, had they reached there on time."

While no fall in the general market was alleged, the court neverthe-
less instructed the jury to the effect that if they found the unreason-
able delays and resultant damage as alleged, they should find for appel-
lant "the difference between the reasonable market value at Denver,
Colo., on the day the said potatoes should have reached point of destina-
tion, except for such delay, if any, and the reasonable market value on
the day the potatoes did arrive at Denver." And also gave at appellee's
request, the following special charge, to which error is assigned, viz:

"You are instructed that in determining the question of the market value of the potatoes at Denver on the date they should have arrived there, you will not consider the evidence as to what the commission company agreed to pay for the potatoes f. o. b. at Bowie, nor will you consider the evidence that such company might have accepted the potatoes in compliance with such f. o. b. contract, had they arrived on time."

No exception has been taken to the general charge, but we think the court committed reversible error in giving the special instruction quoted, and can not agree with appellee that such error is harmless on the ground that there is no proof of market value, and that hence appellant in no event was entitled to recover. Among other things the witness Arenz, from whom we have before quoted, testified that, "We based the price of 60 cents per bushel for these potatoes upon the Denver market;" and further, that after separating them he sold the sound potatoes to merchants, and the "off stock" to peddlers; that he got the best prices they could for the potatoes, receiving as high as $1.50 per hundred pounds, and as low as 35 cents per hundred pounds, and that they were "getting about the same prices for potatoes as I got for the best of these that were shipped in this car from Bowie." The quantity and prices received for the several grades into which the potatoes had been assorted were shown, and the whole testimony, we think, tended to show market value of merchantable potatoes, and that appellant was entitled to have considered on the question of value not only this testimony, but also the fact that he had contracted to sell them for 60 cents per bushel (if the jury found that the potatoes shipped were such as called for by the contract). The evidence to which the special charge relates was objected to on the ground that it appeared that the appellee company had no notice thereof at the time of or during the shipment. It may be conceded that, as proof of special damages, in was inadmissible, and that the contract price was not recoverable because of the want of such notice; but regardless of this, upon proof that the potatoes were such as called for by the contract and in good condition when shipped, and of the negligence and unreasonable delays charged, and that such negligence and unreasonable delay proximately resulted in the damages shown, appellant was entitled to receive the difference in the market value of the potatoes at Denver, Colo., in the condition in which they would have arrived but for said negligence and delay, and in which they did arrive, and on the issue of such market value the price at which the potatoes were actually sold was receivable. See 1 Suth. on Dam., 2 ed., sec. 447.

It is ordered that for the error discussed the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Speer, Associate Justice, disqualified and not sitting.