## MELTZER v. PENNSYLVANIA R. CO.
### No. 20346.

District Court, E. D. Pennsylvania.
March 25, 1939.

---

841

Joseph S. Kleinbard, of Philadelphia, Pa., for plaintiff.

Barnes, Biddle & Myers and Robert V. Massey, Jr., all of Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge.

This is a suit to recover damages for injury to thirty-five carloads of watermelons delivered by the defendant railroad company to the plaintiff, the consignee, at Philadelphia. The case was tried at the same term of court as Bronstein v. Baltimore & Ohio Railroad Company, D. C., 29 F.Supp. 837, in which an opinion has been filed this day. Upon the general question of liability, the issues were much the same, and the discussion of that point in the Bronstein case is fully applicable here and

need not be repeated but may be referred to if need be.

In this case, I make the same finding that I made in the Bronstein case, namely, that as to each car in suit a number of watermelons were injured by the negligent handling of the car, resulting in damage to the plaintiff.

In the Bronstein case, the parties agreed not only upon the measure of damages applicable, but also upon the evidence appropriate to proving damages, thus eliminating that very troublesome question. There is no such agreement here, and the theories of the plaintiff and defendant are widely at variance.

The substance of the dispute upon this point is not so much as to the measure of damages as to the sufficiency of the evidence produced to establish it. Both parties accept in principle the general rule that the correct measure is the difference between the value of the damaged melons, had they arrived in good condition, and their value in the condition in which they did arrive. But the defendant contends that, inasmuch as the plaintiff has offered no evidence of the fair market value of the damaged melons as such and separately from the uninjured ones, he has failed to prove legally recoverable damages and is therefore not entitled to a verdict in any amount. The plaintiff replies that the damaged melons were not and could not well have been sold separately, and that the evidence offered by him meets the requirements of an accurate estimate of damages better than opinion testimony based upon a theoretical market price, there being no actual market for damaged melons as such.

The merit of the plaintiff's position and the injustice of compelling him to produce the kind of testimony usually offered arises from the manner in which watermelons delivered in the yards at Philadelphia are sold by the consignees, who are in this case, and almost invariably, wholesale dealers. As business is transacted there, it is neither customary nor feasible to unload the cars, separate the damaged melons from the good ones, and sell them separately. I am satisfied that such procedure could not have been adopted by this plaintiff, and, if adopted, probably would not have produced as good a price as the method which he used. Whether or not better prices could be obtained if all the dealers in the Philadelphia yards should

change the entire system of doing business there, is impossible to say.

There are no facilities for sorting and piling the melons at the point of arrival. It would take time and involve expense, and might mean delay and loss of the market. What happens is that, when a car arrives, it is opened, the buyer looks at the load, makes an offer for the number he wants—100, 200, 300 or more, as the case may be—based upon his estimate of the number of damaged melons which he will get in his lot. This practice involves the understanding that he will accept bruised and cracked melons provided they are not decayed or smashed or in a condition which everyone recognizes as absolutely worthless. Such melons he may reject, but subject to this, he takes them as they come.

■ The Interstate Commerce Act, U.S. C., T. 49, Sec. 20 (11), 49 U.S.C.A. § 20 (11), fixes "the full actual loss, damage, or injury to such property caused by * * * any such common carrier" as the measure of damages applicable. And I have in mind the principles stated in Story Parchment Co. v. Paterson Paper Co., 282 U.S. 555, 563, 51 S.Ct. 248, 250, 75 L.Ed. 544, that, "Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate."

■ Of course, the price realized for the run-of-the-car lots does bear some logical relation to the number and fair market value of the damaged melons in the carload and in the lot purchased. Objections to using it as a measure of damages are (a) that it represents merely a buyer's estimate of the number of imperfect melons rather than an accurate count, (b) that an under-the-market sale may be partly, at least, the result of factors other than the actual condition of the commodity, and (c) that it means that the carrier must pay for losses arising not only from the actual injury to the melons but also from the general disordered or jumbled appearance of the car when opened; because that is one

of the principal things upon which the buyer bases his estimate of the amount of damage and consequently his price.

As to the first two objections it may be said (a) that there seems to be no absolute necessity of proving the exact number of units damaged, provided the money loss upon the whole carload can be ascertained with reasonable accuracy, and (b) that it may be assumed that the consignee has every reason to try to realize the best price possible and would much rather obtain the full market price than be left with a claim against the railroad. This is the reason why evidence of actual sales is almost always accepted as prima facie evidence of market value, unless there is something which indicates that the sale is out of the ordinary in some way.

■ As to (c). Many of these cars, when opened, disclosed the load in great confusion and disorder, often piled up in one end of the car, with melons turned and upended throughout. This was more than a mere matter of appearance, and, under the method of selling which prevailed in Philadelphia (known, of course, to the carrier), was a definite factor affecting the value of the commodity to the consignee. I think that the carrier's obligation to deliver in good condition is not extended beyond its proper limits by holding it breached by a delivery of the whole cargo in such a state of disorder that its market value is directly and logically affected.

■ I therefore think it proper to accept the plaintiff's evidence of prices obtained by him as prima facie evidence of his "full actual loss."

■ I shall not, however, allow him the entire amount. It must be conceded that even bruised and cracked melons have a substantial value, depending upon the extent to which they appear to be injured, though of course it will not be the full market price. Consequently it would be unfair to allow the plaintiff a sum larger than the full market price of all the melons damaged. It may be assumed that, where the prices which he received showed a greater loss than this, the excess was due to something other than the damage or else that the buyer's estimate of the value was to that extent inaccurate.

Another deduction will also have to be made. It is not possible to transport a carload of watermelons any considerable distance without some shifting of the load

and some amount of damage. This must be taken into consideration, because it means that a certain amount of injury can not be charged to the defendant's negligence. I fixed this normal expectancy or limit of tolerance, in the Bronstein case, at twenty-five for the long melons, and forty for the round ones. The testimony in this case is much the same and I will take the same standard. I have also eliminated cinder damage and chemical burns —the latter for want of evidence as to the extent and cause of what was at most an apparent injury.

I fix the plaintiff's damages at $2,500 with interest as claimed.

Judgment may be entered for the plaintiff for $2,500 with interest.