CONDITIONED AIR CORPORATION, appellee, v. ROCK ISLAND MOTOR TRANSIT COMPANY, appellant.

No. 50443.

APRIL 3, 1962.

REHEARING DENIED MAY 8, 1962.

A. B. Howland, of Des Moines, for appellant.

Bradshaw, Fowler, Proctor & Fairgrave and Harris Coggeshall, all of Des Moines, for appellee.

GARFIELD, C. J.—This appeal involves the measure of recovery from defendant, Rock Island Motor Transit Company, for damage to a shipment of aluminum panels. Trial was to the court without a jury. Defendant has appealed from judgment allowing most, but not all, of plaintiff's claim. Errors are assigned in receiving evidence of, and allowing for, two items of damage defendant contends are improper.

Plaintiff's place of business is in Des Moines. It had a contract with Bowers Construction Company, herein called Bowers, to furnish 206 anodized aluminum panels, about 10 feet long and 28 inches wide, for use in constructing a new school building at Montezuma for which Bowers was principal contractor. Plaintiff formed and bent the panels and shipped them by defendant's truck and semitrailer to Colors, Inc. in Indianapolis to be anodized, i.e., to have a thin protective coating of pure aluminum applied to prolong their life. After the anodizing was done, the return shipment was damaged in transit. The trial court found 153 panels were damaged so they were unfit for use on the job.

As soon as the damaged panels were inspected and counted plaintiff ordered new material to replace them, formed and bent 153 new panels and shipped them to Colors, Inc. to be anodized. When these new panels were received back by plaintiff they did not match in color the panels not damaged in the first shipment. The trial court found it was impossible to match the color of the first panels. Substantial evidence supports this finding. The first panels were anodized in March, the second shipment in July. A different "batch" of aluminum was used in anodizing the replacement panels. There is undisputed testimony that the only way in which identical color could have been obtained on

all the panels was to replace all 206 and that would be more expensive.

The Montezuma school board and Bowers were unwilling to accept the 153 new panels because the color did not match those in the first shipment. However, negotiations between plaintiff, Bowers and the school board resulted in their acceptance at a reduction in cost to the school district of $1250 which was charged to plaintiff. Bowers also charged plaintiff $500 for its extra work in sorting and placing the panels. The trial court allowed plaintiff the cost of replacing the damaged panels, including cost of material, labor, anodizing and freight to and from Indianapolis, and also the $1250 it was compelled to deduct from the contract price. The $500 deduction in favor of Bowers was disallowed. Defendant took and retained possession of the 153 damaged panels from the first shipment. They have a salvage value to defendant of about 13 cents a pound.

Defendant's first two assigned errors complain of the admission of evidence, over its objections, of the reduction in cost to the school district of the $1250 and allowance of this amount to plaintiff.

The court also received evidence, over defendant's objections, of plaintiff's overhead and operating expenses for 1959, the year the panels were furnished. They totaled about $22\frac{1}{2}\%$ of its direct expense for labor and material. The court allowed plaintiff $928.56, 17% of its direct expense for labor and material in furnishing the replacement panels. Defendant's third and fourth assigned errors are directed to the receipt of this evidence and allowance to plaintiff of this item. Defendant concedes it is liable for the actual cost of replacing the damaged panels.

I. As the parties agree, defendant's liability for damage to this interstate shipment is governed by subparagraph 11, section 20, 49 U.S.C.A. Defendant is liable, according to the statute, "for the full actual loss, damage, or injury to such property caused by it." See Adams Express Co. v. Croninger, 226 U. S. 491, 506, 33 S. Ct. 148, 57 L. Ed. 314, 320, 44 L. R. A., N. S., 257; 13 C. J. S., Carriers, sections 263, 264; 9 Am. Jur., Carriers, section 778.

The most commonly applied measure of a shipper's loss

for injury to the shipment is the difference between its market value at destination if it had not been injured and such value in its injured condition. Gulf, C. & S. F. R. Co. v. Texas Packing Co., 244 U. S. 31, 37, 37 S. Ct. 487, 61 L. Ed. 970, 973; 13 C. J. S., Carriers, section 264a; 9 Am. Jur., Carriers, section 780. See also Parsons v. United States Express Co., 144 Iowa 745, 752, 123 N.W. 776, 25 L. R. A., N. S., 842.

"The test of market value is at best but a convenient means of getting at the loss suffered. It may be discarded and other more accurate means resorted to if, for special reasons, it is not exact or otherwise not applicable." Illinois Cent. R. Co. v. Crail, 281 U. S. 57, 64, 65, 50 S. Ct. 180, 181, 74 L. Ed. 699, 703, 67 A. L. R. 1423, 1426; 9 Am. Jur., Carriers, section 780.

It is not unusual to allow recovery for the reasonable cost of repairing or restoring injured property, especially where the expense of so doing is less than the diminution in value because of the injury. And if the value of the repaired or restored property is less than the value of the property before the injury, such difference in value is also allowed, in addition to the reasonable cost of repair or restoration. 25 C. J. S., Damages, section 83b, page 599; 15 Am. Jur., Damages, section 124, page 534.

Restatement Torts, section 928, sets forth this rule:

"Where a person is entitled to a judgment for harm to chattels not amounting to a total destruction in value, the damages include compensation for (a) the difference between the value of the chattel before the harm and the value after the harm or, at the plaintiff's election, the reasonable cost of repair or restoration where feasible, with due allowance for any difference between the original value and the value after repairs, * * *."

As noted in comment a to this section, if it does not reasonably appear economical to repair or replace the damaged chattel, "the damages are the full value of the subject matter at the time of the tort, less the junk value of the remains."

The rule just stated is approved in Bartl v. City of New Ulm, 245 Minn. 148, 150, 72 N.W.2d 303, 305, and citations; Hermes v. Markham (N.D.) 60 N.W.2d 267, 273. Plaintiff cites this rule in support of the trial court's allowance of the $1250 item. Defendant contends its liability is limited to the cost of

replacing the damaged panels and that the item just mentioned is not included therein.

■ II. We think the rule from the Restatement may properly be applied here and that it supports allowance to plaintiff of the $1250. Unless this sum is included in the award to plaintiff it will not be reimbursed for its "full actual loss" as the statute contemplates. Expenditure of the remaining amounts included in the judgment was insufficient to replace the damaged panels in their original condition or value. It is not contended this was through any fault of plaintiff. As previously stated, there is evidence it was impossible to match the color of the first shipment. Thus the court could properly find the difference in color was also not chargeable to any fault of Colors, Inc. The court found, we think justifiably, the plan plaintiff followed in replacing the damaged panels was the only practical and economical method it could pursue. Certainly it was much less expensive than replacing all 206 panels, so the color would be uniform throughout.

■ It is true no witness testified directly that value of the 153 replacement panels was $1250 less than the value of those replaced if they had not been damaged in transit. Such testimony might well have been produced and perhaps would have simplified our problem. But we feel evidence that plaintiff was compelled to accept for the replacement panels $1250 less than it would have received for the original ones, if not damaged, is substantial evidence of their reduced value. It is not suggested plaintiff did not negotiate in good faith with the principal contractor and the school board, nor that it did not effect the best possible sale of the replacement panels. Of course it was to its advantage to do so. See Meltzer v. Pennsylvania R. Co., D. C. Pa., 29 F. Supp. 840, 842.

■ Evidence of the price for which personal property sells at a bona fide sale is competent evidence of its value. Vincent, Albin & Strahl v. Hines, 198 Iowa 1224, 1230, 200 N.W. 1, and citations; Southwestern R. Co. v. Davies, 53 Ga. App. 712, 186 S.E. 899, 902; Garlington v. Fort Worth & D. C. Ry. Co., 34 Tex. Civ. App. 274, 78 S.W. 368, 369; Rodgers v. Texas & P. Ry. Co., Tex. Civ. App., 172 S.W. 1117; 2 Sutherland on Damages, Fourth Ed., section 447, page 1448; 13 C. J. S., Carriers,

section 255, 1(2), page 573, section 264a, pages 611, 612; 32 C. J. S., Evidence, section 1049a; 20 Am. Jur., Evidence, section 373.

The Garlington and Rodgers cases, supra, hold evidence is receivable that damaged goods were sold for the best price obtainable and what such price was. See also Gulf, C. & S. F. R. Co. v. Texas Packing Co., supra, 244 U. S. 31, 37, 37 S. Ct. 487, 61 L. Ed. 970, 973.

There is authority that the contract price is also evidence of the value of the goods shipped. Lyons v. Grand Trunk R. Co., 185 Mich. 417, 152 N.W. 88, 89, Ann. Cas. 1917D 162, 164; 13 C. J. S., Carriers, section 264e, page 615; 9 Am. Jur., Carriers, section 783.

Our conclusion also finds support in Weirton Steel Co. v. Isbrandtsen-Moller Co., 2 Cir., N. Y., 126 F.2d 593, 594; Meltzer v. Pennsylvania R. Co., supra, D. C. Pa., 29 F. Supp. 840, 842; Cordery v. American Ry. Exp. Co., 5 N. J. Misc. 600, 137 A. 719.

III.   Defendant's principal argument in support of its first two assigned errors is that the item of $1250 constitutes special damages which are not recoverable unless at the time the shipment was made it was notified of the facts upon which the claim therefor might be based.

■   The general rule is that special damages are not recoverable from a carrier for injury to goods shipped unless it had notice or knowledge of the special circumstances from which such damages would flow. Percy v. Chicago, R. I. & P. R. Co., 207 Iowa 889, 892–894, 223 N.W. 879; Alton R. Co. v. Oklahoma Furniture Mfg. Co., 190 Okla. 216, 122 P.2d 152, 166 A. L. R. 1030, 1032, and annotation, 1034; 13 C. J. S., Carriers, section 267; 9 Am. Jur., Carriers, section 789.   There is no evidence defendant was informed, at the time of the original shipment, of the purpose for which the panels were to be used.

■   However, we are not persuaded the item of $1250 constitutes special damages within the above rule.   Certainly the difference between the value of the original shipment if it had not been injured and the value in its injured condition would constitute general, not special, damages.   And we think, in lieu thereof, the reasonable cost of restoring the injured panels, with due allowance for the difference between their original value and

the value after restoration, also constitutes general, not special, damages. As stated, defendant concedes liability for the cost of restoration. We are cited to no authority for the proposition that depreciation in value of the restored goods constitutes special damages which are not allowable in the absence of notice.

IV. As previously stated, defendant's remaining assigned errors are directed to the receipt of evidence of plaintiff's overhead and operating expense for 1959, the year the panels were furnished, and the allowance to plaintiff therefor of $928.56, 17% of its direct expense for labor and material in replacing the injured panels. It is argued this item is not shown to be part of the actual loss plaintiff sustained.

Over defendant's objection as irrelevant, immaterial and not bearing on the proper measure of damages, a statement prepared by competent accountants was received in evidence showing plaintiff's operating and overhead expense for 1959. It contains 29 items, with the cost of each. The total is about $225,000. Nearly half this figure consists of officers' salaries and wages other than direct. We understand this means pay of administrative and supervisory personnel. Other principal items include building rent, travel, depreciation on machinery (the largest item aside from officers' and indirect compensation), auto, truck and plane expense, operating supplies and expense, insurance, telephone and telegraph, and moving to new building.

The statement also includes payroll taxes of about $9500 and payments to employees' welfare and education funds of about $5300. Insurance totals more than $10,000. The court added to the direct cost of labor for which recovery was allowed 10% of the amount actually paid in wages, to cover payroll taxes, employees' welfare and education funds and workmen's compensation insurance. These items total about 10% of the wages paid. They are duplicated in the statement of overhead and operating expense.

The total of all these items ($225,000) is about 22½% of plaintiff's direct expense for all labor and material during 1959. The allowance to plaintiff of 17% of its direct cost for labor and material in replacing the injured panels is therefore a reduction of substantially 25% from the proportionate cost of overhead (22½%) for the entire year. This, of course, much

more than makes up for duplication of the items added to the wages paid for labor. The reduction would also include several other items, such as plaintiff's expense of $6500 in moving into a new building, for which the court may have concluded no allowance should be made.

The vital question raised by these assigned errors is whether plaintiff is entitled to recover, as part of its cost of replacing the injured panels, the above portion of its operating and overhead expense in addition to its direct cost for labor and material on this job. It is a difficult question to be solved with little help from the briefs. If the right answer is in the affirmative, the objection urged to the evidence was properly overruled. We do not understand defendant objects primarily to the extent of the allowance but to any allowance for operating and overhead expense.

We think defendant's liability for plaintiff's "full actual loss", which the federal statute contemplates, includes not only the direct cost of labor and materials in replacing the injured panels, which is concededly due, but also a fair allowance for the cost of furnishing officers and supervisors, building, machinery, power and other items of operation and overhead. There is substantial evidence to support the amount of the trial court's allowance for these items if plaintiff is entitled to any recovery therefor. We are not called upon to say what, if anything, we would allow if we were triers of the facts or if our review were de novo as in equity cases.

Plaintiff's president testified without dispute, "In connection with doing the work we incurred certain overhead expenses in the operation of machines, such as presses, stamping machines, and electricity. The machinery has to be housed, and supervisors and officers to be paid—cost items and overhead which any factory of this nature has." On cross-examination as to operating and overhead expense this witness said, "we spent more proportionately on the Montezuma job than any other we have had, in comparison with volume, due to this mishap in shipment."

Plaintiff's president also testified, "In the contracting business this overhead, * * * and referring to these panels and nothing else our overhead, would be much higher than 22%."

Further, "We have had much more supervisory expense on this job than any other since I have been in the business which is not reflected in the labor costs."

The authorities generally distinguish between operating and overhead expense. The former consists of those items inseparably connected with the productive end of the business. The latter consists of charges generally of a nonproductive or indirect nature such as administrative costs incident to the management, supervision or conduct of the capital outlay of the business. Lytle, Campbell & Co. v. Somers, Fitler & Todd Co., 276 Pa. 409, 120 A. 409, 27 A. L. R. 41, 43, 44; Mann v. Schnarr, 228 Ind. 654, 95 N.E.2d 138, 141, 142, 143.

" 'Overhead' cannot be defined with precision. 'It may be said to include broadly the continuous expenses of a business irrespective of the outlay on particular contracts.' " Wynkoop Hallenbeck Crawford Co. v. Western Union Telegraph Co., 268 N. Y. 108, 112, 196 N.E. 760, 761; Grand Trunk Western R. Co. v. H. W. Nelson Co., 6 Cir., Mich., 116 F.2d 823, 839.

Under "cost-plus" construction contracts it is generally held the contractor may not include overhead expense as part of the costs unless the contract expressly so provides. An important reason for this seems to be that the parties evidently intended the percentage payment (usually ten or fifteen per cent in addition to labor and material cost) to compensate for the contractor's overhead. Lytle, Campbell & Co. v. Somers, Fitler & Todd Co., supra, and annotation, 27 A. L. R. 48, 50, 51; Shaw v. G. B. Beaumont Co., 88 N. J. Eq. 333, 102 A. 151, 2 A. L. R. 122, and annotation, 126; Jensen v. Manthe, 168 Neb. 361, 95 N.W.2d 699, 703; Nolop v. Spettel, 267 Wis. 245, 64 N.W.2d 859, 862–864.

We feel these precedents do not conflict with the conclusion herein reached. The Lytle, Campbell & Co. case, supra, observes, "This charge must be determined as each case presents its own peculiar circumstances." (Page 415 of 276 Pa., page 411 of 120 A.)

Several precedents lend support to our decision on this point. Grand Trunk Western R. Co. v. H. W. Nelson Co., supra, 6 Cir., Mich., 116 F.2d 823, 839, holds overhead expenses of a contractor may be considered in computing damages for breach of a construction contract. "The jury was not required

to view appellee's loss as totally separate and apart from its general work." Salaries of executive officers there made up about half the claim for overhead.

United Electrical, Radio & Machine Workers v. Oliver Corp., 8 Cir., Iowa, 205 F.2d 376, 387–389, approves recovery for overhead in an employer's action against a labor union for damages for violation of a no-strike clause in the employment contract. The opinion says, "In determining the amount of an admitted damage mathematical accuracy is not required of juries. It is sufficient that a reasonable estimate based on relevant factors is reached" (page 389 of 205 F.2d).

In Pacific Portland Cement Co. v. Food Machinery & Chemical Corp., 9 Cir., Cal., 178 F.2d 541, 555, declaratory relief was sought as to the meaning of a contract provision relating to an increase in cost of production of gypsum. After considering the question at length the opinion holds indirect or overhead expense was part of the cost of production. "In the case of corporations operating on a large scale 'it is considered legitimate accounting practice to allocate general overhead expenses to particular operations upon a percentage basis' [citations]."

Patent infringement cases frequently hold the infringer is entitled to set off a reasonable allowance for overhead as against profits from manufacture of the patented article for which he is liable to the patentee. Sammons v. Colonial Press, 1st Cir., Mass., 126 F.2d 341, 350, 351; Alfred Bell & Co. v. Catalda Fine Arts, D. C. N. Y., 86 F. Supp. 399, 415. See also Levin Bros. v. Davis Mfg. Co., 8 Cir., Minn., 72 F.2d 163. The Sammons and Alfred Bell cases point out that to be allowable, overhead need not be a direct expense on the particular job—indeed if expense were direct it would not be overhead.

Gordon Form Lathe Co. v. Ford Motor Co., 6 Cir., Mich., 133 F.2d 487, 500, 501, is a patent infringement case which considers the effect of overhead in determining profits. We quote from the opinion:

"It is a matter of common knowledge that all well-managed manufacturing businesses recognize overhead costs as financial outlays expended in the production of an article or process. * * *

"There is probably no single phase of determining cost of manufacturing a device or machine which is more elusive or difficult than the allocation of overhead to a particular article. The impossibility of precise allocation is generally recognized and the law is not so exacting as to require a delicately balanced scientific method of determination, which reaches a mathematical certainty. * * *

"The cost of manufactured products consists of the sum of direct costs, that is, direct material and direct labor, plus indirect costs, or manufacturing expense. Because of its indirect and general nature, manufacturing expense cannot be charged directly to each production order as can direct material and direct labor. It must therefore be distributed over production in such manner that each kind of product and each lot of work produced will be charged with its fair share of the indirect expense."

V. The precedents defendant cites in support of its third and fourth assigned errors are not in point. Principal reliance is upon Illinois Central R. Co. v. Crail, supra, 281 U. S. 57, 50 S. Ct. 180, 74 L. Ed. 699, 67 A. L. R. 1423, and Brown Coal Co. v. Illinois Central R. Co., 196 Iowa 562, 192 N.W. 920. In each case a coal dealer sought recovery for a shortage of something over 5000 pounds in a carload shipment of coal at the retail price of coal in small lots. Neither plaintiff had resold the coal but intended merely to add it to his stock. Both decisions hold the measure of the loss was the wholesale market price at destination rather than the retail price of the small quantity in the shortage. In each case the plaintiff was able to purchase other similar coal at wholesale. Each plaintiff sought to recover from the railroad the profit he would have earned had he sold at retail the coal which was short, without deduction for any of the expense that would have been incurred in such sale, but which in fact was not incurred.

The soundness of the cited decisions is scarcely open to question. See annotations, 50 A. L. R. 1467, 67 A. L. R. 1427; 9 Am. Jur., Carriers, section 784. Plaintiff here makes no claim for any profit from the injury to the panels. It seeks to recover only its loss therefrom. The judgment appealed from does no

more than compensate for such loss and no profit is included therein.—Affirmed.

All JUSTICES concur.