214 So.2d 431

WEST BROS., INC.

v.

RESOURCE MANAGEMENT SERVICE, INC.

6 Div. 488.

Supreme Court of Alabama.

Sept. 26, 1968.

Bishop & Carlton, Birmingham, for appellant.

Macbeth Wagnon, Jr., and John P. Adams, of Bradley, Arant, Rose & White, Birmingham, for appellee.

MERRILL, Justice.

This case was originally assigned to another member of the court and was reassigned to the author of this opinion on July 29, 1968.

This appeal is from a judgment in the amount of $1,105.35 in favor of appellee, hereinafter designated the shipper, against appellant, hereinafter designated the carrier. The trial court heard the case without a jury.

The complaint, as amended, is in six counts; each claiming damages in the amount of $1,200. Counts One, Two, Five and Six are ex delicto and Counts Three and Four are ex contractu.

The action is for recovery of damages for the alleged late delivery by the carrier of a shipment of slash pine seed tendered to it at Birmingham for transportation to New Orleans for connection with a steamship for further movement to Buenos Aires, Argentina. The shipment was re-received by the carrier on the morning of September 10, 1965, for delivery in New Orleans on September 13 to meet a sailing date of September 14. However, the shipment was lost and was not found until September 23.

Hurricane Betsey struck New Orleans just before midnight on September 9, and the carrier's yard was flooded. The shipment actually arrived in New Orleans on September 15. The steamship's sailing was delayed and postponed until September 21. On September 16, around 7:00 o'clock P.M., the shipper was notified by its freight forwarder that the shipment had not arrived, and at approximately the same time the carrier advised the shipper by telephone that it had no record of the shipment. The next day, September 17, the carrier again advised the shipper that it had no record of the shipment and could not locate the seed. September 18, according to the carrier's evidence, was the last date that the seed comprising the shipment could have any market value or viability, because it would lose its germinative capacity when removed from refrigeration for over a week at the then prevailing temperatures. On September 20, the shipper removed a new shipment of seed from cold storage in Birmingham and delivered the seed to New Orleans in a pickup truck. On September 21, the ship, with the seed on board, sailed for Argentina. On September 23, the shipper was again advised by the carrier that it had no record of the shipment and that the shipper should file a claim. Later that same day, the shipper was advised by the carrier that the seed had been located in Hattiesburg, Mississippi, at carrier's home office.

The shipper's evidence shows (1) that it delivered the seed to the carrier, (2) that at the time of such delivery the seed was in good condition, and (3) that at the time the seed was made available either for delivery to the consignee under the bill of

lading or return to the shipper, the seed was worthless.

The carrier argues that its evidence shows that it is excused from liability because (1) the admitted delay in forwarding the shipment was caused by an act of God, (2) the damage to the seed resulted from an inherent defect in the seed, and (3) the shipper failed to prove its damages.

■ A carrier's liability for damage to goods shipped in interstate commerce is governed by the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C.A. § 20(11). And this amendment pre-empts the field and supercedes all state common law rights arising from a breach of a bill of lading contract for the interstate carriage of goods. Sylgab Steel & Wire Corp. v. Strickland Transportation Co., D. C., 270 F.Supp. 264.

In Missouri Pacific Railroad Co. v. Elmore & Stahl, 377 U.S. 134, 84 S.Ct. 1142, 12 L.Ed.2d 194, it is said:

" * * * The Carmack Amendment of 1906, § 20(11) of the Interstate Commerce Act, makes carriers liable 'for the full actual loss, damage, or injury * * caused by' them to property they transport, and declares unlawful and void any contract, regulation, tariff, or other attempted means of limiting this liability. It is settled that this statute has two undisputed effects crucial to the issue in this case: First, the statute codifies the common-law rule that a carrier, though not an absolute insurer, is liable for damage to goods transported by it unless it can show that the damage was caused by '(a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods.' (Citations omitted.) Second, the statute declares unlawful and void any 'rule, regulation, or other limitation of any character whatsoever' purporting to limit this liability. (Citations omitted.) Accordingly, under federal law, in an action to recover from a carrier for damage to a shipment, the shipper establishes his prima facie case when he shows delivery in good condition, arrival in damaged condition, and the amount of damages. Thereupon, the burden of proof is upon the carrier to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability. (Citations omitted.)"

This rule is followed in Continental Can Co. v. Eazor Express, Inc., 2 Cir., 354 F.2d 222.

■ Under the facts already stated, the shipper made out a prima facie case and the burden of proof passed to the carrier to show that it was free from negligence and that the damage was due to one of the excepted causes.

■ We think the mere fact that the carrier, after unquestionably receiving the shipment of two drums of pine seed, could neither find it, or a bill of lading or any record of the shipment for some thirteen days, when the carrier had been notified that the seed was due to be loaded on a steamship sailing from New Orleans on the fourth day from the time the shipment was received by the carrier, makes out a case of negligence on the part of the carrier.

In support of its contention that the delay was caused by an act of God, the carrier adduced evidence that after the first and second impact of hurricane Betsey just before midnight on September 9, the wind died down, but the water began to rise in carrier's terminal yard in New Orleans and rose nearly five feet. The office, sleeping quarters and pickup and delivery equipment were flooded; there was no mobile power, power and telephone lines were down and there was no way to notify the home office at Hattiesburg of the difficulty.

L. D. Nation, the then manager of carrier's New Orleans terminal, and other

employees were stranded at the terminal until the next afternoon (Friday, September 10) when they were evacuated by boat. The home office at Hattiesburg was notified around 7:00 P.M. on Friday. The shipment of seed was finally located and sent to Hattiesburg.

■ An act of God is not a complete, blanket defense in a carrier liability case. By its very definition an act of God implies an entire exclusion of all human agency from causing the loss or damage. Compania DeVapores Insco, S. A. v. Missouri Pacific R. Co., 5 Cir., 232 F.2d 657. And an act of God absolves a carrier from liability only if there is no contributing human negligence. Levatino Co. v. American President, Lines, Ltd., 2 Cir., 337 F.2d 729. In McCurdy v. Union Pacific R. Co., 68 Wash.2d 457, 413 P.2d 617, the Supreme Court of Washington said:

"* * * The carrier's contributing, concurring, subsequent or superseding neglect is sufficient to make it liable notwithstanding proof of a latent defect, act of God or one of the other limited number of excepted causes which may relieve a carrier of liability to an owner.

"The general rule is summarized at 13 C.J.S. Carriers § 80, p. 159:

"[I]t is very generally declared that, if the negligence of the carrier concurs with the excepted cause in producing a loss or injury, the carrier is not exempted from liability by showing that the immediate cause was the act of God, or some other excepted cause. As otherwise expressed, the carrier is responsible where the loss is caused by an act of God or other excepted cause, if the carrier's negligence mingles with it as an active and cooperative cause."

■ Since the carrier was not free from negligence in the instant case in losing the shipment, it cannot avoid liability on the defense that the delay was caused by an act of God.

■ The same reason applies to the defense that the seed, if damaged at all, were damaged as a proximate result of their inherent nature.

The carrier argues that the shipper failed to prove any recoverable damages. It argues that the shipper could not recover the invoice price of the seed because it did not lose its sale.

In Great Atlantic & Pacific Tea Co., Inc. v. Atchison, Topeka & Santa Fe R. Co., 7 Cir., 333 F.2d 705, the court said:

"The general common law rule of damages in cases of unreasonable delay and damage to goods in shipment is the difference in the market value of the goods at the date and in the condition they were contracted to arrive at their destination and the date on and the condition in which they actually arrived. (Citations omitted.)

* * * * *

"The market value rule has been applied in the absence of a purchase by the shipper at the market price on the contracted for arrival date to fulfill existing contracts. (Citation omitted.)

"The measure of damages in delay and damaged goods cases is actual damages, and the market value rule has been adopted as a method to ascertain actual damages. * * *"

See Missouri Pacific R. R. Co. v. John Jancik Produce, (Tex.Civ.App.) 396 S.W. 2d 427.

■ Here, the testimony was that the seed were worthless when found by the carrier and under the Carmack Amendment, the carrier was liable for the "full actual loss, damage or injury to such property caused by it."

■ The trial court did not err in admitting the invoice showing the price of the seed to be $985.60 or in fixing the shipper's damage to the seed at that amount.

The carrier also argues that the trial court erred in awarding special or conse-

quential damages in the amount of $119.75, the actual expenses incurred by the shipper in transporting the second shipment of seed from Birmingham to the boat at New Orleans in the pickup truck.

 The general rule is that a carrier is not chargeable with or liable for special damages resulting from delay in transportation or delivery of goods entrusted to it for shipment, unless notice of the special circumstances rendering prompt delivery and transportation essential is given at or before the time of making the contract of shipment. Strickler v. Baltimore & Ohio R. R. Co., 165 Ohio St. 423, 135 N.E.2d 844; Conditioned Air Corp. v. Rock Island Motor Transit Co., 253 Iowa 961, 114 N.W.2d 304, 3 A.L.R.3d 679.

 The undisputed testimony of shipper's agent, Harry E. Murphy, as to notice to the carrier of special circumstances was:

"Q When you undertook to make arrangements for transportation of this seed with West Brothers Company, what did you do?

"A Well, I came down on a Friday morning to deliver the seed and specifically went to the offices and told them I had their seed to be shipped to New Orleans, needed to be there on the 14th, and in view of the reported hurricane that occurred in New Orleans, could they handle it, and they said, yes. We underlined the bill to be sure that it got there on the 14th.

\*   \*   \*   \*   \*   \*

"Q All right. Let's go back to the time that you delivered this seed to West on the 10th. Did you have any discussion with any of the representatives there at the West terminal with reference to the perishable nature of this freight?

"A Yes. I did.

"Q Would you recount what you can recall at that discussion?

"A Well, I told them that the seed was of a perishable type, a perishable nature, and that at any extended period it would lose its viability and 'Could you assure that you could get it down there by the 14th?' That would be a safe period of time. They said, yes. And then the emphasis was, I keep recalling, 'We'll make sure. Don't worry about it' or something to that effect. Well, 'We'll scratch it underneath this bill of lading that you gave me to emphasize,' and then that's the reason we went out to the dock for the man to particularly be acquainted with the fact to be sure it was going to get there on the 14th."

Also, the carrier's freight bill on the seed shipment shows the following notation: "SHIP SAILS TUESDAY MORNING SEPT 14TH" and under that notation the word "RUSH" appears nine times.

We think this is clearly an occasion for the assessment of the special damages in the sum of $119.75.

Affirmed.

LIVINGSTON, C. J., and LAWSON and HARWOOD, JJ., concur.