**UNITED STATES of America, Plaintiff,**

v.

**MID–SOUTH MUSIC CORPORATION, et al., Defendants.**

**Civ. A. No. 3:84–0968.**

United States District Court, M.D. Tennessee.

Sept. 20, 1985.

---

Joe B. Brown and Franklin Childress, Nashville, Tenn., Philip West, Joseph M. Jones, Alice J. Davis, Office of Special Litigation, Tax Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Sam Johnson, Hendersonville, Tenn., for MSM Records.

## MEMORANDUM OPINION

NEESE, Senior District Judge, sitting by Designation and Assignment.

This is an action in the name of the United States, commenced at the request of the Secretary of the Treasury of the United States, to enjoin the defendants Mid-South Music Corporation (Mid-South) and its president Mr. (Robert) Autry Inman and others from engaging further in conduct subject to penalty under 26 U.S.C. § 6700 (relating to penalty for abusive tax-shelters, etc.). 26 U.S.C. § 7408(a). A hearing on such application as to certain defendants was conducted by the Court on June 3–5, inclusive, 1985.

From the stipulated facts, the evidence received on such hearing, the inferences flowing reasonably therefrom, and the entire record, this Court makes the following

### FINDINGS OF FACT:

1. The defendant Mr. Inman in December, 1980 organized Mid-South which organized and promoted an investment plan known as the "Mid-South Music Corporation Master Recordings Lease Program" and organized and promoted similar plans in 1981–1983, inclusive.

2. Mid-South and Mr. Inman made in connection with such organizations gross valuation overstatements as to the material

matters of the respective correct valuations of master sound recordings.

3. (a) As a dozen examples of such gross valuation overstatements, certain single master sound recordings were thus overvalued as follows after simultaneous or recent sales in the amounts which follow also:

| | Sale price and date | Sale price and date | Sale price and date | Overvaluation and date(s) |
|---|---|---|---|---|
| 1. | $10,000 cash<br>December 23, 1980 | | $12,500 cash<br>737,500 note<br>December 27, 1980 | $1,000,000<br>December 12, 1980<br>May 27, 1981 |
| 2. | $2,500 cash<br>September 29, 1981 | $4,000 cash<br>October 5, 1981 | $4,200 cash<br>245,800 note<br>October 6, 1981 (sic) | $250,000 to<br>350,000<br>October 15, 1981 |
| 3. | $4,500 cash<br>September 8, 1982 | $4,700 cash<br>495,300 note<br>September 7, 1982 (sic) | $4,900 cash<br>995,100 note<br>September 8, 1982 | $1,000,000<br>September 8, 1982 |
| 4. | $4,500 cash<br>September 8, 1982 | $4,700 cash<br>495,300 note<br>September 7, 1982 (sic) | $4,900 cash<br>995,100 note<br>September 8, 1982 | $1,000,000<br>September 9, 10, 1982 |
| 5. | $1,000 cash<br>July 20, 1982<br><br>$4,900 cash<br>995,100 note<br>September 8, 1982 (sic) | $4,500 cash<br>September 8, 1982 | $4,700 cash<br>495,300 note<br>October 8, 1982 | $1,000,000<br>September 9, 10, 1982 |
| 6. | $10,200 cash<br>239,800 note<br>October 7, 1982 | $10,400 cash<br>489,600 note<br>October 7, 1982 | | $ 500,000<br>October 11, 12, 1982 |
| 7. | $2,500 cash<br>October 1, 1982<br><br>$4,900 cash<br>995,100 note<br>October 8, 1982 (sic) | $4,500 cash<br>October 6, 1982 | $4,700 cash<br>495,300 note<br>December 7, 1982 | $1,000,000<br>March 17, 1982 (sic)<br>October 12, 1982 |
| 8. | $4,500 cash<br>July 7, 1982 | $4,700 cash<br>495,300 note<br>July 7, 1982 | $4,900 cash<br>995,100 note<br>July 8, 1982 | $1,000,000<br>July 14, 1982<br>August 2, 1982 |
| 9. | $2,200 cash<br>November 11, 1982 | $2,400 cash<br>122,600 note<br>November 12, 1982 | $2,600 cash<br>247,400 note<br>November 15, 1982 | $ 250,000<br>November 24, 1982<br>December 11, 1982 |
| 10. | $6,500 cash<br>October 6, 1982 | $6,700 cash<br>493,300 note<br>October 7, 1982 | $6,900 cash<br>993,100 note<br>October 8, 1982 | $1,000,000<br>March 18, 1982 (sic)<br>October 13, 1982 |
| 11. | $20,000 cash<br>December 30, 1983 | $30,000 cash<br>December 30, 1983 | $30,400 cash<br>2,469,600 note<br>December 30, 1983 | $2,500,000<br>February 18, 20, 1984 |
| 12. | $4,500 cash<br>November 16, 1983 | | $4,700 cash<br>995,300 note<br>November 28, 1983 | $ 250,000 to<br>1,000,000<br>February 17, 19, 1984 |

(b) Each of the foregoing sales (which includes a promissory note as part of its consideration) was not *bona fide*.

4. (a) This Court DETERMINES that the correct valuations, respectively, of the sound recordings to which there is allusion in 3(a), *supra*, were as follows:

(1) $12,500  
(2) $4,000  
(3) $4,700  
(4) $4,700  
(5) $4,500  
(6) $10,000  
(7) $4,500  
(8) $4,500  
(9) $2,200  
(10) $6,500  
(11) $20,000  
(12) $4,500  

(b) Each aforementioned overvaluation was in an amount exceeding 200% of the

correct valuation of the sound recording involved.

5. (a) Each such gross overvaluation statement was made by Mid-South and Mr. Inman to respective taxpayers in the pertinent investment plan of Mid-South and related directly to the amount of a deduction or credit allowable to the participant * under title 26 U.S.C., ch. 1.

(b) Each such overvaluation was in or near the exact amount Mid-South instructed so-called "independent" appraisers to place upon such recording as representing such appraiser's personal opinion as an expert of the correct valuation thereof.

(1) Mr. William B. Martin, one such purported "independent" appraiser for Mid-South, made no appraisals at all, although his pertinent documentation stated that his estimate of correct valuation constituted his appraisal. Mr. Martin was in privity with Mid-South and Mr. Inman (and was enjoined preliminarily during the hearing herein *sua sponte* by the Court from misrepresenting further his opinion(s) as appraisals when, in fact, his opinion concerned his estimate of the most productive manner in which to market the content(s) of such recording(s)).

(c) As a course of action, Mid-South paid (by means of increasing by that amount the purported cash consideration relating to each such sale) to the purported purchaser-seller a fee of $200 per transaction.

6. The foregoing non-*bona fide* sales were made to provide an apparent basis for the gross overvaluation(s) of the recordings by Mid-South as well as an apparent basis for the grossly inflated appraisals thereof, all for the purpose of misrepresenting to investors and prospective investors the correct valuation of the respective recording(s).

7. In such statements, there was no separation of the correct valuation of the recording(s) and the correct valuation of the leasehold-interest therein offered to in-

vestors and prospective investors in Mid-South's investment plan.

■ 8. (a) Mid-South and Mr. Inman promoted an abusive tax shelter within the meaning of 26 U.S.C. § 6700, *supra.*

(b) Mid-South and Mr. Inman, each, is liable to pay a penalty equal to the greater of $1,000 or 20% of the gross income derived by Mid-South from such abusive activity.

9. Since 1983 Mid-South and Mr. Inman offered investors and prospective investors a modified investment plan whereby duplex dwellings were constructed and leased-back, until such practice was stopped by a cease-and-desist order of securities authorities of the state of Tennessee. After disposing of his interest in Mid-South in 1984, Mr. Inman reacquired the same and intends to utilize that corporation in a manner implicating sound recordings after accomplishing " * * * more research on taxes * * *." Accordingly, Mr. Inman and Mid-South must be expected to seek some means of "getting around" federal tax laws with questionable investment plans involving sound recordings in the future.

10. The operation of the foregoing abusive tax shelter by Mr. Inman and Mid-South created an unnecessary expense to the United States of $250,000 or more in the investigation of the investments it precipitated in 30 states and 34 IRS districts in the ascertainment, computation and collection of federal income taxes.

11. Further injury to the United States is threatened unless the unlawful conduct of Mid-South and Mr. Inman is restrained. This injury would be virtually irreparable, because courts of law cannot afford an adequate or commensurate remedy therefor to the United States.

This Court has reached the following

## CONCLUSIONS OF LAW:

A. This Court has jurisdiction of the subject matter hereof, 26 U.S.C. § 7408(a), (b), and of the parties hereto.

* "The lessee receives the investment tax credit which is passed through from the owner/lessee.

This amounts to money deductible from the lessee's tax bill."

B. (1) Upon findings that conduct subject to penalty under 26 U.S.C. § 6700, *supra*, has been engaged in and that injunctive relief is appropriate in a civil action under 26 U.S.C. § 7408(a), (b), *supra*, this Court may enjoin such person(s) from engaging in such conduct or in any other activity subject to penalty under 26 U.S.C. § 6700, *supra*. 26 U.S.C. § 7408(b).

(2) Any person who assists in the organization of any investment plan and makes and furnishes in connection therewith a gross valuation overstatement as to any material matter is subject to pay a penalty equal to the greater of $1,000 or 20 per cent of the gross income derived by such person from such activity. 26 U.S.C. §§ 6700(a)(1)(A)(ii), (a)(2)(B).

(3) It is unnecessary to a decision herein to consider whether Mid-South and Mr. Inman are subject to penalty under 26 U.S.C. § 6700(a)(2)(A).

(4) "Gross valuation overstatement" means herein any statement as to the value of the master sound recordings implicated if the value so stated exceeds 200 per cent of the amount determined to be the correct valuation and that the value of such recordings was related directly to the amount of a deduction or credit allowable under 26 U.S.C., ch. 1, to any participant. 26 U.S.C. § 6700(b)(1)(B).

■ C. (1) Any sales of the particular sound recordings implicated herein were proper to be considered by expert witnesses in establishing the respective correct valuations thereof, *cf. Jones v. United States*, 258 U.S. 40, 48–49, 42 S.Ct. 218, 220[5], 66 L.Ed. 453 (1922), provided the *bona fide* nature of such sales was shown, *Conditioned Air Corp. v. Rock Island M.T. Co.*, 3 A.L.R.3d 679, 684[7], 253 Iowa 961, 114 N.W.2d 304 (1962), *reh. den.* (1962), *cert. den.*, 371 U.S. 825, 83 S.Ct. 46, 9 L.Ed.2d 64 (1962).

■ (2) When the identical article leased is to be returned in the same form, " * * * the contract is one of bailment, and the title to the property is not changed * * *," *Sturm v. Boker*, 150 U.S. 312, 329, 14 S.Ct.

99, 104, 37 L.Ed. 1093 (1893); so that the correct valuation of an article which is leased is less than the correct valuation of full title thereto.

■ (3) The correct valuation of master sound recordings is the original cost of the materials, labor and skills going into its recording and its value to its owner for a particular use. *Cf. Leoncini v. Post*, 13 N.Y.S. 825 (1891) (relating to the value of sheet music which had been annotated and transposed).

D. (1) When " * * * special knowledge will assist the trier of fact to understand the evidence and determine a fact in issue a witness qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise * * *." Rule 702, F.R.Evid.

■ (2) Where an expert witness testifies without giving any acceptable opinion, the inference is left to be drawn by the trier of fact. *United States v. Hill*, 655 F.2d 512, 516[4] (3d Cir.1981); *Sheldon v. Metro-Goldwyn Picture Corporation*, 309 U.S. 390, 407, 60 S.Ct. 681, 687, 84 L.Ed. 825 (1940) (where the trial Court had rejected as a criterion therefor the price assigned motion picture rights because, *inter alia*, " * * * the inferences were too doubtful. * * * ")

■ E. Injunctive relief against the defendants Mid-South and Mr. Inman and Mr. William B. Martin is appropriate to prevent recurrence of their conduct subject to penalty under 26 U.S.C. § 6700, *supra*. 26 U.S.C. § 7408(b)(2), *supra*.

F. " * * * [A] decree of injunction not only binds the parties defendant but also those * * * in 'privity' with them * * *." *Regal Knitwear Co. v. National Labor Rel. Bd.*, 324 U.S. 9, 13, 65 S.Ct. 478, 481[3], 89 L.Ed. 661 (1953), cited in *Golden State Bottling Company, Inc. v. N.L.R.B.*, 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973). (However, the permanent injunction against Mr. Martin, *supra*, herein must be limited to the acts enjoined preliminarily by the Court during trial.)

From all which, the Court reaches the following

## DECISION:

The application of the plaintiff United States of America hereby is GRANTED, and the defendants Mid-South Music Corporation and Mr. (Robert) Autry Inman, each, will be enjoined from further engaging in conduct subject to penalty under 26 U.S.C. § 6700, *supra,* and from engaging in any other activity subject to penalty thereunder. 26 U.S.C. § 7408(b).

## ORDERS:

The clerk will not prepare, sign, and enter judgment herein at this time, Rule 58(2), F.R.Civ.P. Counsel for the plaintiff will initiate efforts of adversary counsel herein to agree upon the content of an injunctive decree as well as upon the content of appropriate notice and opportunity for hearing in behalf of Mr. William B. Martin. Such will then be submitted for the Court's consideration and entry of a judgment.